**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYAN KNIBBS, | : | |
| | : | |
| Plaintiff | : | Civil Action No. 05-CV-4739 |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| CIGNA Corporation, Connecticut | : | |
| General Life Insurance Company | : | |
| (CGLIC), John A. Steinmacher, and | : | |
| Eugene L. Piro, | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this _____ day of _____, 2005, it is hereby
ORDERED that the instant proceedings are STAYED and the parties are COMPELLED
and ORDERED to arbitrate Plaintiff's claims pursuant to CIGNA Companies'
Employment Dispute Arbitration Rules and Procedures, consistent with the Federal
Arbitration Act, 9 U.S.C. §§ 1 et seq.

_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RYAN KNIBBS,                                     :
                                                 :
        Plaintiff           :       Civil Action No. 05-CV-4739
                                                 :
        v.                  :       JURY TRIAL DEMANDED
                                                 :
CIGNA Corporation, Connecticut General           :
Life Insurance Company (CGLIC), John A.          :
Steinmacher, and Eugene L. Piro,                 :
                                                 :
        Defendants          :

## MOTION TO STAY JUDICIAL PROCEEDINGS AND COMPEL ARBITRATION

COMES NOW Defendants CIGNA Corporation, Connecticut General Life Insurance Company, John A. Steinmacher, and Eugene L. Piro (collectively "Defendants"), by and through undersigned counsel and pursuant to Rule Local Rule 7.1 and the Federal Arbitration Act ("FAA"), 9 U.S.C. § et seq., respectfully move this Court to stay the judicial proceedings, compel arbitration, and award Defendants five hundred dollars ($500.00) in attorneys' fees for their having to prepare and file this motion and supporting documents. Defendants contemporaneously submit a Brief in Support of their Motion to Stay Judicial Proceedings and Compel Arbitration.

WHEREFORE, Defendants CIGNA Corporation, Connecticut General Life Insurance Company, John A. Steinmacher, and Eugene L. Piro respectfully request that this Court grant the instant motion, stay judicial proceedings, compel arbitration, award Defendants five hundred dollars ($500.00) in attorneys' fees for having to prepare this motion and supporting documents, and further grant any relief the Court seems appropriate.

By:    /s/ Kristine Grady Derewicz
       Kristine Grady Derewicz, Esquire
       Littler Mendelson, P.C.
       Three Parkway; Suite 1400
       1601 Cherry Street
       Philadelphia, PA  19102
       (267) 402-3003

       Attorney for Defendants CIGNA
       Corporation, Connecticut General
       Life Insurance Company, John A.
       Steinmacher, and Eugene L. Piro

Dated: October __, 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RYAN KNIBBS,       :
           :
    Plaintiff      :   Civil Action No. 05-CV-4739
           :
    v.       :   JURY TRIAL DEMANDED
           :
CIGNA Corporation, Connecticut General :
Life Insurance Company (CGLIC), John A. :
Steinmacher, and Eugene L. Piro,   :
           :
    Defendants     :

**BRIEF IN SUPPORT OF MOTION TO STAY JUDICIAL PROCEEDINGS**
**AND COMPEL ARBITRATION**

## I. INTRODUCTION

Plaintiff Ryan Knibbs ("Plaintiff") has agreed to arbitrate his claims against Defendants CIGNA Corporation,[1] Connecticut General Life Insurance Company ("CGLIC"), John A. Steinmacher, and Eugene L. Piro (collectively "Defendants") rather than proceed in this or any other judicial forum. Defendants bring this Motion to Stay Judicial Proceedings and Compel Arbitration ("Motion") to enforce Plaintiff's agreement to arbitrate. Plaintiff's counsel has acknowledged Plaintiff's agreement to arbitrate and has even signed the form initiating the arbitration process. Therefore, Defendants respectfully request an order staying the instant judicial proceedings and compelling arbitration through a neutral, third-party arbitrator.

## II. STATEMENT OF FACTS

Plaintiff was employed by Connecticut General Life Insurance Company ("CGLIC"), which is a CIGNA company. (Exhibit 1, Employee Handbook Receipt and Agreement). CGLIC, as a CIGNA company, has in effect an Employment Dispute Resolution Program, which

---

[1] Defendant CIGNA Corporation did not employ Plaintiff. Rather, Plaintiff was employed by Defendant Connecticut General Life Insurance Company, which is a CIGNA Company.

provides a forum for the resolution of employment related issues by neutral, third party arbitrators.  (Ex. 1; Exhibit 2, Excerpts from Employee Handbook).   On January 13, 2001, Plaintiff signed an Employee Handbook Receipt and Agreement which contains an agreement to use CGLIC's internal and external employment dispute resolution processes to resolve legal claims against Defendants rather than to go to court or to a government agency for a hearing to decide his legal claims, and to submit his employment related claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration.  (Ex. 1).

Specifically, the Employee Handbook Receipt and Agreement signed by Plaintiff states the following:

> This is to acknowledge that I have received my copy of the July 1998 employee handbook, *You and CIGNA*.  I understand that by accepting employment and being eligible to receive increases in compensation and benefits, I am agreeing to the following two important terms of my employment described in *You and CIGNA*: (1) my employment can be terminated by me or my employer at any time for any reason – therefore, my employment is at the will of either party, and (2) I will use the Company's internal and external employment dispute resolution processes to resolve legal claims against the Company – therefore rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration.  I understand further that these two terms of my employment replace and supersede any prior agreement concerning these terms and cannot be changed except in writing signed by me and the president of the Company.

(Ex. 1).  The Employee Handbook acknowledgement further states, "The term 'the Company' means the particular CIGNA subsidiary or company that employs you." (Ex. 1).

> The Employee Handbook contains a summary of the company's dispute resolution policy and arbitration procedures in addition to many other company policies.  The inside front cover of the handbook provides the following:
>
> This handbook applies to all U.S. based regular full-time and regular part-time employees of the CIGNA* companies identified on the last page of this handbook. This handbook contains important information about your contract of

employment as well as policies and programs that relate to you in your work at CIGNA and about benefits for which you may be eligible. *The terms of your employment mentioned in this Handbook are legally binding, and you may want to review these terms with your legal counsel.*

* * *

This handbook contains only two terms of your employment. They are very important. The first is that your employment is not for any fixed period of time. Just as you can terminate your employment at any time for any reason, the Company can terminate your employment at any time for any reason. The second is that by accepting employment and being eligible to receive increases in compensation and benefits, you agree that you will not go to court or a government agency for a hearing to decide an employment-related claim. Instead, you will resolve all employment related legal disputes (except worker's compensation and unemployment compensation) by going to a neutral third party arbitrator. *Regardless of what anyone may have told you or you may have read before you were hired or after, these two terms or your employment are the full and complete agreement between you and the Company concerning these terms and cannot be changed except by written agreement between you and your employer signed by the President of the Company.*

* The terms "CIGNA" and "Cigna companies" as used throughout this handbook mean CIGNA Corporation and/or its subsidiaries. CIGNA Corporation owns the subsidiaries for which most employees work. The term "the Company" means the particular CIGNA subsidiary that employs you.

(Ex. 2) (emphasis in original).

As set forth in the Employee Handbook, there are two internal dispute resolution processes, Speak Easy and Peer Review, and one external process, Arbitration. The Handbook clearly states that Arbitration is the final binding step of the Employment Dispute Resolution Program and that employees must use arbitration for employment related claims rather than go to court. The Employee Handbook summarizes the Arbitration Policy and Procedures as follows:

*Arbitration* – If an employee is not satisfied with the result of either the Speak Easy Process or the Peer Review Process, and the issue falls under the scope of the Arbitration Policy, he or she may request arbitration, which is the last step of the Employment Dispute Resolution Program. The Arbitration Policy was designed as a faster, less expensive substitute for going to court. *Mutual promises by both the employee and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and*

*arbitration must be used rather than going to court to enforce legal rights and claims (or going to a government agency which is some states acts like a court in judging claims).*

The agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes include claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment. If the law in the state in which an employee works provides for a government agency hearing to decide questions of law related employment discrimination claims, then the agreement of the employee and the employer is that arbitration must be used instead of a government agency hearing to decide the claim or going to court and having a jury.

(Ex. 2) (emphasis added).

Plaintiff filed the instant action against Defendants claiming his employment was improperly terminated in violation of the Family and Medical Leave Act of 1993, the Americans With Disabilities Act of 1991, the Pennsylvania Human Relations Act, and the common laws of the Commonwealth of Pennsylvania (Complaint), which are claims are expressly covered by the arbitration policy he agreed to with Defendant CGLIC. (Ex. 1).

On October 7, 2005, Defendants' counsel sent Plaintiff's counsel a letter advising that Plaintiff had entered into an enforceable agreement to arbitrate his claims, and including as exhibits to the letter a form necessary to initiate arbitration and the applicable arbitration rules and procedures. (Ex. 3). Plaintiff's counsel subsequently confirmed Plaintiff's agreement to arbitrate during an October 11, 2005 telephone conference. This telephone conference and agreement was noted in an October 13, 2005 letter from Defendants' counsel to Plaintiff's counsel. (Ex. 4)

The parties entered into a stipulation, approved by this Court on October 20, 2005, extending the time until October 31, 2005 for Defendants' to answer, plead, or otherwise move in response to Plaintiff's Complaint in order to allow an opportunity to initiate arbitration and stay these proceedings. On October 21, 2005, Plaintiff's counsel submitted a signed "CIGNA Companies' Employment Dispute Arbitration Request Form" to Defendants' counsel initiating arbitration. (Ex. 5).

On Monday, October 24, 2005, Defendants' counsel submitted to Plaintiff's counsel a proposed stipulation and consent motion to stay proceedings and allow for arbitration of claims with the intent to have the motion filed and the instant proceedings stayed prior to October 31, 2005. During the morning of Tuesday, October 25, 2005, counsel for Plaintiff spoke with Bradley Strawn, a counsel for Defendants. Plaintiff's counsel advised that he and his client still agreed to arbitration but that he had a few changes to the proposed stipulation and consent motion. Plaintiff's counsel indicated he would mark his changes on the draft stipulation and consent motion and fax the changes to Mr. Strawn's office that day. To date, Defendants' counsel has not received Plaintiff's revisions.

Since the morning of Tuesday, October 25, 2005, Defendants' counsel's office has made at least seven unreturned telephone calls to Plaintiff's counsel in an effort to finalize a stipulated consent motion to stay judicial proceedings and allow for arbitration, and to avoid the necessity of filing the instant Motion.

## III.   ARGUMENT AND CITATION OF AUTHORITY

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), was enacted to overcome courts' reluctance to enforce arbitration agreements. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270 (1995). The United States Supreme Court's decisions in Gilmer v.

Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), and Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001), make clear that the FAA provides for the arbitration of employment related disputes.

Plaintiff's employment was governed by a valid arbitration agreement.  As explained in Circuit City, 532 U.S. at 105, the Supreme Court has "been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context."  The court has also been clear that by agreeing "to arbitrate a [federal] statutory claim, a party does not forego the substantive rights afforded by the statute, it only submits to their resolution in an arbitral, rather than a judicial forum." 532 U.S. at 123.  Similarly, the Third Circuit Court of Appeals has approved arbitration of employment related statutory claims.  Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 224-27 (3d Cir. 1997).  Further, more than a dozen courts across the country, including the Eastern District of Pennsylvania, have enforced arbitration policies virtually identical to this policy in cases against other CIGNA companies.  See Brennan et al. v. ACE INA Holdings et al., No. 00-2730, (E.D.Pa. June 13, 2001)[2] (Tucker, J.); Venuto v. Ins. Co. of N. Am., No. 98-96, 1998 WL 414723 (E.D. Pa. July 22,1998)[3] (Giles, J.).[4]

In Venuto, Judge Giles enforced the arbitration policy in a case against a CIGNA Property and Casualty subsidiary called Insurance Company of North America ("INA").  The court concluded that INA's Arbitration Policy, which was distributed in analogous circumstances

[2] A copy of this decision is attached as Exhibit 6 for the Court's convenience.

[3] A copy of this decision is attached as Exhibit 7 for the Court's convenience.

[4] See, e.g., Jasso v. Lovelace Health Systems, Inc., No. CIV. 01-0521 (D.N.M. Jan. 31, 2002); Powell v. CIGNA Property and Cas. Co., No. 3:99CV857 (E.D. Va. June 6, 2000); Thomas v. CIGNA Healthcare of Ohio, No. C2-98-875 and C2-98-997 (S.D. Oh. Sept. 30, 1999); Henderson v. Healthsource Mass., No. 98-40121-NMG (D. Mass. Sept. 14, 1999); Fahim v. CIGNA Invs., Inc., No. 3:98CV232 (D. Conn. Sept. 10, 1998); Wilson v. INA, No. 97-CV-76036 (E.D. Mich. April 28, 1998); Porter v. CIGNA (Ins. Co. of N. Am.), No. 1:96-CV-765-MHS (N.D. Ga. March 26, 1997); Thompson v. INA, No. 3:96CV567-P (W.D.N.C. Feb. 23, 1998); LeBlanc v. CIGNA HealthCare, No. 96204036 (Md. Cir. Ct., Balt. Cty. Feb. 17, 1997); Budge v. CIGNA Ins. Co., No. 96AS00974 (Ca. Super. Aug. 9, 1996); Toone v. Conn. Gen. Life Ins. Co., No. 96-AS00974  (Ca. Super. March 11, 1997).

to those here, was a binding agreement to arbitrate, despite the fact the employee in <u>Venuto</u> did not sign a Handbook Receipt and Agreement in which she expressly agreed to arbitrate, like Plaintiff did in the instant case.

The <u>Venuto</u> court also rejected the plaintiff's argument against enforceability based on inequality of bargaining power. The court wrote that "[t]he Supreme Court has held that '[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.'" <u>Id.</u> at *3 (citing <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 33 (1991)). Finally, the <u>Venuto</u> court held that "an employee's decision to continue working with an employer for a substantial period of time after the imposition of the new policy . . . demonstrates acceptance of its terms." <u>Id.</u>

<u>Venuto</u> is one of numerous cases within the Third Circuit and Eastern District of Pennsylvania in which the court has upheld an arbitration policy governing employment related statutory claims. <u>See, e.g.</u>, <u>Great Western Mortgage Co. v. Peacock</u>, 110 F.3d 222 (3d Cir. 1997) (affirming district court's granting of motion to compel arbitration for claim under the New Jersey Law Against Discrimination); <u>Mathers v. Sherwin-Williams Co., Inc.</u>, No. 97-5138, 2000 WL 311030 (E.D. Pa. Mar. 27, 2000) (granting defendant's motion to confirm arbitration award over Title VII/PHRA claim) (Broderick, J.); <u>Montgomery v. Earth Tech Remediation Servs.</u>, No. 99-5612, 2000 WL 276101 (E.D. Pa. Feb. 29, 2000) (granting defendant's motion to compel arbitration) (Bartle, J.); <u>Sena v. Gruntal & Co. LLC</u>, No. 99-3042, 1999 WL 732974 (E.D. Pa. Sept. 21, 1999) (granting defendants' motion to dismiss in favor of arbitration) (Padova, J.).

Here, under the arbitration policy, Defendants and Plaintiff are subject to a final and binding decision by an arbitrator over their claims. The policy is essentially identical to policies determined to be valid by over a dozen courts. The policy is supported by adequate

consideration in the form of mutual promises to be bound by the arbitrator's decision and by Plaintiff's continued employment.  Plaintiff accepted the terms of the arbitration policy by virtue of his continued employment and by acknowledgment of his obligations under the policy through the receipt he signed on January 13, 2001. (Ex. 1)  Plaintiff also subsequently reaffirmed his agreement to arbitrate through his attorney's submission of a signed CIGNA Companies' Employment Dispute Arbitration Request Form on October 21, 2005. (Ex. 4).

Accordingly, the arbitration policy signed by Plaintiff is an enforceable agreement.  The instant federal court action should be stayed and arbitration should be compelled.  Defendants should be awarded five hundred dollars ($500.00) for their attorneys' fees incurred in having to prepare this Motion and supporting documents as a result of Plaintiff's counsel's failure to communicate with Defendants' counsel to finalize the previously contemplated consent motion to stay proceedings and allow for arbitration.

## IV.    CONCLUSION

For the reasons set forth above, Defendants CIGNA Corporation, Connecticut General Life Insurance Company, John A. Steinmacher, and Eugene L. Piro  respectfully request that this Court grant their Motion to Stay Judicial Proceedings and Compel Arbitration, award Defendants five hundred dollars ($500.00) for their having to prepare the instant Motion and supporting documents, and grant any further relief this Court deems appropriate.

By:    /s/ Kristine Grady Derewicz
Kristine Grady Derewicz, Esquire
Littler Mendelson, P.C.
Three Parkway; Suite 1400
1601 Cherry Street
Philadelphia, PA  19102
(267) 402-3003

Attorney for Defendants CIGNA
Corporation, Connecticut General
Life Insurance Company, John A.
Steinmacher, and Eugene L. Piro

Dated: October 31, 2005

## CERTIFICATE OF SERVICE

I, Bradley E. Strawn, certify that I caused the foregoing Motion to Stay Judicial

Proceedings and Compel Arbitration, Brief in Support of Motion to Stay Judicial Proceedings

and Compel Arbitration, and Proposed Order to be served on, via first class mail upon the

following:

> Thomas More Holland, Esquire
> Law Offices of Thomas More Holland
> Grace Hall
> 1522 Locust Street
> Philadelphia, PA 19102

_/s/ Bradley E. Strawn_
Bradley E. Strawn

Dated: October 31, 2005

# EXHIBIT 1

## E. WORKING TOGETHER

**1. EMPLOYEE RELATIONS**   CIGNA strives to treat its employees fairly and equitably.

*Documentation*   A good manager maintains appropriate documentation concerning employment-related decisions and actions and clearly communicates those decisions and actions to affected employees. CIGNA maintains formal methods for employees to bring employment-related problems or concerns to the attention of management.

CIGNA strongly believes that third party intervention into dealings between management and its employees is not in the best interests of either its employees or CIGNA. CIGNA will directly oppose, within the boundaries of the law, any attempt through third party intervention to limit an individual employee's right to deal directly with management.

CIGNA's human resources staff, with support from CIGNA's counsel, develop procedures and practices to maintain a positive working environment, to encourage communication between employees and management, to resolve employment-related problems and to deal with third party intervention.

*Third Party Intervention*   "Third party intervention" means an attempt or any other activity by an organization which may lead to a third party representing CIGNA company employees to CIGNA management, particularly where such representation involves wages, benefits or working conditions. Typically, these attempts are made by labor organizations or unions, but they may also be made by professional associations, external and social pressure groups or internal employee groups.

**2. EMPLOYMENT DISPUTE RESOLUTION PROGRAM**   To help CIGNA maintain a positive work environment, the Employment Dispute Resolution Program was developed. This program consists of three processes which *are mandatory* and were designed to provide employees with an effective arena for resolving work-related conflicts while improving the lines of communication. The two internal processes and one external process are summarized below:

## E. WORKING TOGETHER

*Internal*

◆ *Speak Easy Process* — The Speak Easy Process is comprised of three phases. Phase I encourages an employee to discuss concerns directly with his or her manager. If the issue cannot be resolved at this level, Phase II provides for a review of issues to be conducted and/or managed by the Division Speak Easy Coordinator. Should the issue not be resolved at Phase II, the employee can request Phase III, by sending a request to the division head. A representative of the division head will coordinate the investigation and resolution. Please see the Speak Easy form (which may be obtained from your human resources representative) for instructions.

◆ *Peer Review Process* — The Peer Review Process features a panel of employees to listen to the facts and witnesses concerning a complaint and render an impartial decision. As an alternative, the employee may choose to have a division head review as the final step. This process is limited to issues that fall within the scope of the Peer Review Process including interpretation or application of company, divisional, departmental or unit policies, work rules and established practices. The Peer Review panel **cannot** change policy, work rules or practices, pay levels, work schedules, performance appraisals or specific business decisions nor grant monetary relief.

Step I enables the employee to address the issue with his or her immediate supervisor. If the employee is not satisfied with the outcome, Step II allows the employee to have his or her concern reviewed by the next level of supervision. If the employee disagrees with the Step II decision, in Step III, he or she may appeal to either the division head or a Peer Review panel. The Peer Review panel consists of five trained panelists including supervisors, exempt and non-exempt employees. Three of the panelists will be employees in the same category as the employee requesting the peer review; for example, non-exempt employees. The Step III decision is final and binding on the employer. Please see the Employment Dispute Resolution Program (which may be obtained from your human resources representative) for more details.

## E. WORKING TOGETHER

An employee can use either the Speak Easy or the Peer Review Process as the internal step in resolving an issue. An employee may not use both processes.

*External*

◆ *Arbitration* — If an employee is not satisfied with the result of either the Speak Easy Process or the Peer Review Process, and the issue falls under the scope of the Arbitration Policy, he or she may request arbitration, which is the last step of the Employment Dispute Resolution Program. The Arbitration Policy was designed as a faster, less expensive substitute for going to court. *Mutual promises by both the employee and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and arbitration must be used rather than going to court to enforce legal rights and claims (or going to a government agency which in some states acts like a court in judging claims).*

The agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes include claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment. If the law in the state in which an employee works provides for a government agency hearing to decide questions of law related employment discrimination claims, then the agreement of the employee and the employer is that arbitration must be used instead of a government agency hearing to decide the claim or going to court and having a jury.

## E. WORKING TOGETHER

Arbitration is conducted by a neutral third party who is an expert in employment matters and it is administered by the American Arbitration Association (AAA). Except for a filing fee, the costs of the arbitration will be paid by the Company unless the employee wants to share in the costs.

The employee and the Company agree to be bound by the decision made by the external, neutral arbitrator. The arbitrator chosen by the employee and employer in accordance with the employer's arbitration rules and procedures will be the sole and exclusive judge of the proper interpretation of the agreement of the parties as well as the rules and procedures of the arbitration process. The arbitrator will have all of the power a judge hearing the dispute would have so that the significant differences between going to arbitration and going to court are that the process will be much faster, less expensive and there will be no jury.

To begin the Arbitration process, an employee should submit a demand for arbitration to the Corporate Employee Relations Department within 30 calendar days after receiving the Peer Review Step III or Speak Easy Phase III decision. The Arbitration Rules and Procedures can be obtained through your local human resources representative.

For further information regarding any of the above processes, please see your local human resources representative.

3. **EMPLOYEE ASSISTANCE PROGRAM (EAP)**

CIGNA's Employee Assistance Program is a confidential assessment and referral program staffed by MCC Behavioral Care, Inc. professionals. If you have a personal problem that is unresolved or is affecting your work performance, you may use the Employee Assistance Program (EAP). The EAP is also available to supervisors for workplace issues as well as crisis intervention. The program may be used by family members whose problems may also have an adverse effect on you and your work. Retired employees may also use the program.

# EMPLOYEE HANDBOOK RECEIPT AND AGREEMENT

*To Be Placed In Employee's Personnel File — Payroll & Personnel Records Department*

This is to acknowledge that I have received my copy of the July 1998 employee handbook, *You and CIGNA*. I understand that by accepting employment and being eligible to receive increases in compensation and benefits, I am agreeing to the following two important terms of my employment described in *You and CIGNA*: (1) my employment can be terminated by me or my employer at any time for any reason – therefore, my employment is at the will of either party, and (2) I will use the Company's internal and external employment dispute resolution processes to resolve legal claims against the Company – therefore rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. I understand further that these two terms of my employment replace and supersede any prior agreement concerning these terms and cannot be changed except in writing signed by me and the president of the Company.

Ryan Knibbs
Print Name

Ryan Knibbs                    01-13-01
Signature                      Date

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
Social Security Number

(*The term "the Company" means the particular CIGNA subsidiary or company that employs you.)

7

# EXHIBIT 2

# YOU AND CIGNA

*Employee Programs*
*Services and Facilities*

This handbook applies to all U.S. based regular full-time and regular part-time employees of the CIGNA* companies identified on the last page of this handbook. This handbook contains important information about your contract of employment as well as policies and programs that relate to you in your work at CIGNA and about benefits for which you may be eligible. *The terms of your employment mentioned in this Handbook are legally binding, and you may wish to review these terms with your legal counsel.*

Policies, programs and benefit plans in effect for the Company which employs you will apply in any particular situation. The policies and programs are provided to your manager or supervisor who will provide information to you about the details of these policies and programs. Descriptions and information about benefit plans are usually distributed directly to you at your home or at your work location. The plans, not this handbook, control your benefits. As circumstances and competitive conditions change, CIGNA reserves the right to change any or all of such policies, programs and benefit plans in whole or in part at any time, with or without notice to you. However, any benefit entitlement to which you have vested rights (including the right to finish an arbitration which has been started) as of the date of the change will not be taken away as a result of any change.

This handbook contains only two terms of your employment. They are very important. The first is that your employment is not for any fixed period of time. Just as you can terminate your employment, at any time for any reason, the Company can terminate your employment at any time for any reason. The second is that by accepting employment and being eligible to receive increases in compensation and benefits, you agree that you will not go to court or a government agency for a hearing to decide an employment-related claim. Instead, you will resolve all employment related legal disputes (except worker's compensation and unemployment compensation) by going to a neutral third party arbitrator. *Regardless of what anyone may have told you or you may have read before you were hired or after, these two terms of your employment are the full and complete agreement between you and the Company concerning these terms and cannot be changed except by a written agreement between you and your employer signed by the President of the Company.*

---

*\* The terms "CIGNA" and "CIGNA companies" as used throughout this handbook mean CIGNA Corporation and/or its subsidiaries. CIGNA Corporation owns the subsidiaries for which most employees work. The term "the Company" means the particular CIGNA subsidiary that employs you.*



This handbook applies to all U.S.-based regular full-time and regular part-time employees of:

Arizona Health Plan, Inc.
Bankers Standard Insurance Company
Century Indemnity Company
CIGNA Community Choice, Inc.
CIGNA Corporation
CIGNA Dental Health, Inc.
CIGNA Dental Health of California, Inc.
CIGNA Dental Health of Colorado, Inc.
CIGNA Dental Health of Delaware, Inc.
CIGNA Dental Health of Florida, Inc.
CIGNA Dental Health of Kansas, Inc.
CIGNA Dental Health of Kentucky, Inc.
CIGNA Dental Health of Maryland, Inc.
CIGNA Dental Health of New Jersey, Inc.
CIGNA Dental Health of New Mexico, Inc.
CIGNA Dental Health of Ohio, Inc.
CIGNA Dental Health of Pennsylvania, Inc.
CIGNA Dental Health of Texas, Inc.
CIGNA Dental Health Plan of Arizona, Inc.
CIGNA Direct Marketing Company, Inc.
CIGNA Excess and Surplus Insurance Services,
   Inc. (a California corporation)
CIGNA Excess and Surplus Insurance Services,
   Inc. (a Georgia corporation)
CIGNA Excess and Surplus Insurance Services,
   Inc. (an Illinois corporation)
CIGNA Health Corporation
CIGNA HealthCare of Arizona, Inc.
CIGNA HealthCare of California, Inc.
CIGNA HealthCare of Colorado, Inc.
CIGNA HealthCare of Connecticut, Inc.
CIGNA HealthCare of Delaware, Inc.
CIGNA HealthCare of Florida, Inc.
CIGNA HealthCare of Georgia, Inc.
CIGNA HealthCare of Illinois, Inc.
CIGNA HealthCare of Louisiana, Inc.
CIGNA HealthCare of Massachusetts, Inc.
CIGNA HealthCare Mid-Atlantic, Inc.
CIGNA HealthCare of New Jersey, Inc.

CIGNA HealthCare of New York, Inc.
CIGNA HealthCare of North Carolina, Inc.
CIGNA HealthCare of North Louisiana, Inc.
CIGNA HealthCare of Northern New Jersey,
   Inc.
CIGNA HealthCare of Ohio, Inc.
CIGNA HealthCare of Oklahoma, Inc.
CIGNA HealthCare of Pennsylvania, Inc.
CIGNA HealthCare of St. Louis, Inc.
CIGNA HealthCare of Tennessee, Inc.
CIGNA HealthCare of Texas, Inc.
CIGNA HealthCare of Utah, Inc.
CIGNA HealthCare of Virginia, Inc.
CIGNA Holdings, Inc.
CIGNA Indemnity Insurance Company
CIGNA Information Services, Inc.
CIGNA Insurance Company
CIGNA Insurance Company of Illinois
CIGNA Insurance Company of Ohio
CIGNA Insurance Company of Texas
CIGNA International Corporation
CIGNA International Investment
   Advisors, Ltd.
CIGNA Investment Advisory Company, Inc.
CIGNA Investments, Inc.
CIGNA RE Corporation
CIGNA Reinsurance Company
Robert F. Coleman, Inc.
Congen Properties, Inc.
Connecticut General Life Insurance Company
Diversified Insurance Agency, Inc.
ESIS, Inc.
ESIS International, Inc.
Excess and Surplus Insurance Services, Inc.
Healthsource, Inc.
Healthsource Arkansas, Inc.
Healthsource Employer Services, Inc.
Healthsource Georgia, Inc.
Healthsource Indiana Managed Care Plan, Inc.

Healthsource Kentucky, Inc.
Healthsource Maine, Inc.
Healthsource Massachusetts, Inc.
Healthsource New Hampshire, Inc.
Healthsource HMO of New York, Inc.
Healthsource North Carolina, Inc.
Healthsource North Texas, Inc.
Healthsource New York / New Jersey, Inc.
Healthsource Ohio, Inc.
Healthsource Physicians Group of South
   Carolina, Inc.
Healthsource Preferred, Inc.
Healthsource South Carolina, Inc.
Healthsource Tennessee, Inc.
Healthsource Texas, Inc.
INA Corporation
INA Financial Corporation
INA Life Insurance Company of New York
INA Special Risk Facilities, Inc.
INAC Corp.
INAMAR Insurance Underwriting Agency, Inc.
Insurance Company of North America
International Surplus Adjusting Services
Jacomo Primary Care, P.C.
Lewis & Norwood, General Agents, Inc.
Life Insurance Company of North America
MarketDyne International, Inc.
MCC Behavioral Care, Inc.
MCC Behavioral Care of California, Inc.
National Employee Benefits Corporation
North Central Texas Independent Practice
   Association, P.C.
Pacific Employers Insurance Company
Parkville Primary Care, P.C.
Psychological Managed Care Consultants, P.C.
Recovery Services International, Inc.
Self-Insurers' Management Corporation
Western Agency Management, Inc.

This handbook will not automatically apply to CIGNA companies acquired or created after the date of publication of this handbook.

**Please Note:** Most "CIGNA employees" work for a company which is a subsidiary of CIGNA Corporation. Unless you work in a corporate staff-type position, it is probable that you are employed by a subsidiary of CIGNA Corporation. Furthermore, CIGNA Corporation does not provide insurance, investment, health care and other services or products to the public as these services or products are provided by its subsidiaries. Instead, CIGNA Corporation is registered to conduct business in Connecticut, Delaware, New York, Pennsylvania, and Washington, D.C. As an employee of a subsidiary, you may in the course of your employment sign correspondence on behalf of such a subsidiary and represent yourself as its employee; but you may not sign correspondence in any other way represent yourselves as an employee or agent of CIGNA Corporation. On the other hand, all employees of CIGNA Corporation and its subsidiaries may identify themselves and others as being "CIGNA company employees" but only an employee on the payroll of CIGNA Corporation may refer to him/ herself as being a "CIGNA Corporation employee." If you have a question about your employing Company, contact your supervisor or the Payroll and Personnel Operations Department.

# EXHIBIT 3

### LITTLER MENDELSON®

A PROFESSIONAL CORPORATION

ARIZONA

CALIFORNIA

COLORADO

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

MASSACHUSETTS

MINNESOTA

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

PENNSYLVANIA

TEXAS

WASHINGTON

October 7, 2005

Kristine Grady Derewicz
Direct: 267.402.3003
Direct Fax: 267.402.3131
kderewicz@littler.com

**Via Hand Delivery**
Thomas More Holland, Esquire
Law Offices of Thomas More Holland
1522 Locust Street
Philadelphia, PA 19102

Re:    <u>Knibbs v. CIGNA Corporation</u>, et al., Civ. Action No. 05-cv-4739

Dear Mr. Holland:

As we discussed in our September 30, 2005, telephone conference, Littler Mendelson, P.C. represents Defendants CIGNA Corporation ("CIGNA") and Connecticut General Life Insurance Company ("CGLIC") in the above referenced matter that you filed in federal court on behalf of your client, Ryan Knibbs. Consistent with our September 30 discussion, we are writing to request that you voluntarily dismiss the Complaint filed in federal court and, in lieu of proceeding in court, initiate arbitration consistent with the alternative dispute resolution procedures to which Mr. Knibbs, CIGNA, and CGLIC contractually agreed.

**I.    Mr. Knibbs Agreed to Arbitrate Any Employment Related Disputes**

Mr. Knibbs was employed by CGLIC, a line of business within CIGNA's healthcare division. CGLIC has in effect an Employment Dispute Resolution Program, which provides a forum for the fair and inexpensive resolution of employment related issues by neutral, third party arbitrators. On January 13, 2001, Mr. Knibbs signed an Employee Handbook Receipt and Agreement which states the following:

> This is to acknowledge that I have received my copy of the July 1998 employee handbook, *You and CIGNA*. I understand that by accepting employment and being eligible to receive increases in compensation and benefits, I am agreeing to the following two important terms of my employment described in *You and CIGNA*: (1) my employment can be terminated by me or my employer at any time for any reason – therefore, my employment is at the will of either party, and (2) I will use the Company's internal and external employment dispute resolution processes to resolve legal claims against the Company – therefore rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM℠

Three Parkway, 1601 Cherry Street, Suite 1400, Philadelphia, Pennsylvania 19102.1321  Tel: 267.402.3000 Fax: 267.402.3131 www.littler.com

Mr. Holland
October 7, 2005
Page 2

employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. I understand further that these two terms of my employment replace and supersede any prior agreement concerning these terms and cannot be changed except in writing signed by me and the president of the Company.

(Ex. 1, Employee Handbook Receipt and Agreement). The Employee Handbook acknowledgement further states, "The term 'the Company' means the particular CIGNA subsidiary or company that employs you." (Ex. 1).

The Employee Handbook contains a summary of the company's dispute resolution policy and arbitration procedures in addition to many other company policies. The inside front cover of the handbook provides the following:

This handbook applies to all U.S. based regular full-time and regular part-time employees of the CIGNA* companies identified on the last page of this handbook. This handbook contains important information about your contract of employment as well as policies and programs that relate to you in your work at CIGNA and about benefits for which you may be eligible. *The terms of your employment mentioned in this Handbook are legally binding, and you may want to review these terms with your legal counsel.*

\* \* \*

This handbook contains only two terms of your employment. They are very important. The first is that your employment is not for any fixed period of time. Just as you can terminate your employment at any time for any reason, the Company can terminate your employment at any time for any reason. The second is that by accepting employment and being eligible to receive increases in compensation and benefits, you agree that you will not go to court or a government agency for a hearing to decide an employment-related claim. Instead, you will resolve all employment related legal disputes (except worker's compensation and unemployment compensation) by going to a neutral third party arbitrator. *Regardless of what anyone may have told you or you may have read before you were hired or after, these two terms or your employment are the full and complete agreement between you and the Company concerning these terms and cannot be changed except by written agreement between you and your employer signed by the President of the Company.*

Mr. Holland
October 7, 2005
Page 3

    \*    The terms "CIGNA" and "Cigna companies" as used throughout this handbook mean CIGNA Corporation and/or its subsidiaries.    CIGNA Corporation owns the subsidiaries for which most employees work.  The term "the Company" means the particular CIGNA subsidiary that employs you.

(Excerpts from Employee Handbook, Ex. 2) (emphasis in original).

    As set forth in the Employee Handbook, there are two internal dispute resolution processes, Speak Easy and Peer Review, and one external process, Arbitration.  The Handbook clearly states that Arbitration is the final binding step of the Employment Dispute Resolution Program and that employees must use arbitration for employment related claims rather than go to court.  The Employee Handbook summarizes the Arbitration Policy and Procedures as follows:

    *Arbitration* – If an employee is not satisfied with the result of either the Speak Easy Process or the Peer Review Process, and the issue falls under the scope of the Arbitration Policy, he or she may request arbitration, which is the last step of the Employment Dispute Resolution Program.  The Arbitration Policy was designed as a faster, less expensive substitute for going to court.  ***Mutual promises by both the employee and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and arbitration must be used rather than going to court to enforce legal rights and claims (or going to a government agency which is some states acts like a court in judging claims).***

    The agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law.  Such serious disputes include claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment.  If the law in the state in which an employee works provides for a government agency hearing to decide questions of law related employment discrimination claims, then the agreement of the employee and the employer is that arbitration must be used instead of a government agency hearing to decide the claim or going to court and having a jury.

Mr. Holland
October 7, 2005
Page 4

(Ex. 2) (emphasis added).

By beginning and thereafter continuing his employment with CGLIC upon and after receiving the Employee Handbook, and signing the Employee Handbook Receipt and Agreement in January 2001, Mr. Knibbs agreed to submit all employment related disputes to arbitration as a term and condition of employment.

Mr. Knibbs filed a federal court action against defendants CIGNA, CGLIC, John Steinmacher, and Eugene Piro, claiming his employment was improperly terminated in violation of the Family and Medical Leave Act of 1993, the Americans With Disabilities Act of 1991, the Pennsylvania Human Relations Act, and the common laws of the Commonwealth of Pennsylvania. Mr. Knibbs' claims are expressly covered by the arbitration policy he agreed to with CGLIC. In its April 7, 2004, position statement to the Pennsylvania Human Relations Commission, CGLIC expressly reserved, and did not waive, its right to have Mr. Knibbs' disputes decided on the merits by a neutral third party arbitrator.

CGLIC demands that Mr. Knibbs dismiss his federal court action and initiate arbitration because his claims are governed by an arbitration policy that covers all employment related claims, and this policy is enforceable under the Federal Arbitration Act ("FAA"). Dozens of courts across the United States, including in the Eastern District of Pennsylvania, have enforced this arbitration policy with respect to employment related claims filed against CIGNA or its affiliates, such as CGLIC. The proper forum for Mr. Knibbs' claims is arbitration, not federal court.

## II.   Governing Law Demands Arbitration

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), was enacted to overcome courts' reluctance to enforce arbitration agreements. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270 (1995). The United States Supreme Court's decisions in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), and Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001), make clear that the FAA provides for the arbitration of employment related disputes. Mr. Knibbs' employment was governed by a valid arbitration agreement. As explained in Circuit City, 532 U.S. at 105, the Supreme Court has "been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context." The court has also been clear that by agreeing "to arbitrate a [federal] statutory claim, a party does not forego the substantive rights afforded by the statute, it only submits to their resolution in an arbitral, rather than a judicial forum." 532 U.S. at 123. Similarly, the Third Circuit Court of Appeals has approved arbitration of employment related statutory claims. Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 224-27 (3d Cir. 1997). Further, more than a dozen courts across the country, including

Mr. Holland
October 7, 2005
Page 5

the Eastern District of Pennsylvania, have enforced arbitration policies virtually identical to this policy in cases against other CIGNA companies. See Brennan et al. v. ACE INA Holdings et al., No. 00-2730, (E.D.Pa. June 8, 2001); (Tucker, J.) Venuto v. Ins. Co. of N. Am., No. 98-96, 1998 WL 414723 (E.D. Pa. July 22,1998) (Giles, J.).[1]

In Venuto, Judge Giles enforced the arbitration policy in a case against a CIGNA Property and Casualty subsidiary called Insurance Company of North America ("INA"). The court concluded that INA's Arbitration Policy, which was distributed in analogous circumstances to those here, was a binding agreement to arbitrate, despite the fact the employee in Venuto did not sign a Handbook Receipt and Agreement in which she expressly agreed to arbitrate, like Mr. Knibbs did in the instant case.

The Venuto court also rejected the plaintiff's argument against enforceability based on inequality of bargaining power. The court wrote that "[t]he Supreme Court has held that '[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.'" Id. at *3 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991)). Finally, the Venuto court held that "an employee's decision to continue working with an employer for a substantial period of time after the imposition of the new policy . . . demonstrates acceptance of its terms." Id.

Venuto is one of numerous cases within the Third Circuit and Eastern District of Pennsylvania in which the court has upheld an arbitration policy governing employment related statutory claims. See, e.g., Great Western Mortgage Co. v. Peacock, 110 F.3d 222 (3d Cir. 1997) (affirming district court's granting of motion to compel arbitration for claim under the New Jersey Law Against Discrimination); Mathers v. Sherwin-Williams Co., Inc., No. 97-5138, 2000 WL 311030 (E.D. Pa. Mar. 27, 2000) (granting defendant's motion to confirm arbitration award over Title VII/PHRA claim) (Broderick, J.); Montgomery v. Earth Tech Remediation Servs., No. 99-5612, 2000 WL 276101 (E.D. Pa. Feb. 29, 2000) (granting defendant's motion to compel arbitration) (Bartle, J.); Sena v. Gruntal & Co. LLC, No. 99-3042, 1999 WL 732974 (E.D. Pa. Sept. 21, 1999) (granting defendants' motion to dismiss in favor of arbitration) (Padova, J.).

---

[1] See, e.g., Jasso v. Lovelace Health Systems, Inc., No. CIV. 01-0521 (D.N.M. Jan. 31, 2002); Powell v. CIGNA Property and Cas. Co., No. 3:99CV857 (E.D. Va. June 6, 2000); Thomas v. CIGNA Healthcare of Ohio, No. C2-98-875 and C2-98-997 (S.D. Oh. Sept. 30, 1999); Henderson v. Healthsource Mass., No. 98-40121-NMG (D. Mass. Sept. 14, 1999); Fahim v. CIGNA Invs., Inc., No. 3:98CV232 (D. Conn. Sept. 10, 1998); Wilson v. INA, No. 97-CV-76036 (E.D. Mich. April 28, 1998); Porter v. CIGNA (Ins. Co. of N. Am.), No. 1:96-CV-765-MHS (N.D. Ga. March 26, 1997); Thompson v. INA, No. 3:96CV567-P (W.D.N.C. Feb. 23, 1998); LeBlanc v. CIGNA HealthCare, No. 96204036 (Md. Cir. Ct., Balt. Cty. Feb. 17, 1997); Budge v. CIGNA Ins. Co., No. 96AS00974 (Ca. Super. Aug. 9, 1996); Toone v. Conn. Gen. Life Ins. Co., No. 96-AS00974 (Ca. Super. March 11, 1997).

Mr. Holland
October 7, 2005
Page 6

Here, under the arbitration policy, CGLIC and Mr. Knibbs are subject to a final and binding decision by an arbitrator over their claims. The policy is essentially identical to policies determined to be valid by over a dozen courts. The policy is supported by adequate consideration in the form of mutual promises to be bound by the arbitrator's decision and by the plaintiff's continued employment. Mr. Knibbs accepted the terms of the arbitration policy by virtue of his continued employment and by acknowledgment of his obligations under the policy through the receipt he signed on January 13, 2001. Accordingly, the arbitration policy is an enforceable agreement and Mr. Knibbs should dismiss his federal court action and initiate arbitration.

We have enclosed an Employment Dispute Arbitration Request Form to be completed and returned to the undersigned in lieu of CGLIC's Corporate Employee Relations Department as indicated in the arbitration policy. (Ex. 3). We also have enclosed the applicable Arbitration Rules and Procedures. (Ex. 4). We will waive any timeliness defenses related to submitting a demand for arbitration, provided the federal court proceeding is dismissed and the demand for arbitration is received by the undersigned on or before 5:00 p.m., October 12, 2005. If Mr. Knibbs does not voluntarily dismiss his federal court proceeding on or before October 12, 2005, we will file a motion to stay proceedings and compel arbitration, and seek attorney's fees and costs associated with the motion.

We recognize October 12 is only a few days away and the time for considering whether you will voluntarily initiate arbitration is short. However, we must insist on a decision from you by October 12 because defensive responses, including a motion to compel arbitration, for CIGNA and CGLIC are due October 17.

Please contact the undersigned if you require additional information or to discuss this matter further.

Sincerely,

Kristine Grady Derewicz

Enclosures

cc:  Christine L. Ciarrocchi, Esq. (w/out enc.)

# TAB 1

**1. EMPLOYEE RELATIONS**

CIGNA strives to treat its employees fairly and equitably.

*Documentation*

A good manager maintains appropriate documentation concerning employment-related decisions and actions and clearly communicates those decisions and actions to affected employees. CIGNA maintains formal methods for employees to bring employment-related problems or concerns to the attention of management.

CIGNA strongly believes that third party intervention into dealings between management and its employees is not in the best interests of either its employees or CIGNA. CIGNA will directly oppose, within the boundaries of the law, any attempt through third party intervention to limit an individual employee's right to deal directly with management.

CIGNA's human resources staff, with support from CIGNA's counsel, develop procedures and practices to maintain a positive working environment, to encourage communication between employees and management, to resolve employment-related problems and to deal with third party intervention.

*Third Party Intervention*

"Third party intervention" means an attempt or any other activity by an organization which may lead to a third party representing CIGNA company employees to CIGNA management, particularly where such representation involves wages, benefits or working conditions. Typically, these attempts are made by labor organizations or unions, but they may also be made by professional associations, external and social pressure groups or internal employee groups.

**2. EMPLOYMENT DISPUTE RESOLUTION PROGRAM**

To help CIGNA maintain a positive work environment, the Employment Dispute Resolution Program was developed. This program consists of three processes which *are mandatory* and were designed to provide employees with an effective arena for resolving work-related conflicts while improving the lines of communication. The two internal processes and one external process are summarized below:

*Internal*

◆ **Speak Easy Process** — The Speak Easy Process is comprised of three phases. Phase I encourages an employee to discuss concerns directly with his or her manager. If the issue cannot be resolved at this level, Phase II provides for a review of issues to be conducted and/or managed by the Division Speak Easy Coordinator. Should the issue not be resolved at Phase II, the employee can request Phase III, by sending a request to the division head. A representative of the division head will coordinate the investigation and resolution. Please see the Speak Easy form (which may be obtained from your human resources representative) for instructions.

◆ **Peer Review Process** — The Peer Review Process features a panel of employees to listen to the facts and witnesses concerning a complaint and render an impartial decision. As an alternative, the employee may choose to have a division head review as the final step. This process is limited to issues that fall within the scope of the Peer Review Process including interpretation or application of company, divisional, departmental or unit policies, work rules and established practices. The Peer Review panel **cannot** change policy, work rules or practices, pay levels, work schedules, performance appraisals or specific business decisions nor grant monetary relief.

Step I enables the employee to address the issue with his or her immediate supervisor. If the employee is not satisfied with the outcome, Step II allows the employee to have his or her concern reviewed by the next level of supervision. If the employee disagrees with the Step II decision, in Step III, he or she may appeal to either the division head or a Peer Review panel. The Peer Review panel consists of five trained panelists including supervisors, exempt and non-exempt employees. Three of the panelists will be employees in the same category as the employee requesting the peer review; for example, non-exempt employees. The Step III decision is final and binding on the employer. Please see the Employment Dispute Resolution Program (which may be obtained from your human resources representative) for more details.

29

An employee can use either the Speak Easy or the Peer Review Process as the internal step in resolving an issue. An employee may not use both processes.

*External*

◆ *Arbitration* — If an employee is not satisfied with the result of either the Speak Easy Process or the Peer Review Process, and the issue falls under the scope of the Arbitration Policy, he or she may request arbitration, which is the last step of the Employment Dispute Resolution Program. The Arbitration Policy was designed as a faster, less expensive substitute for going to court. ***Mutual promises by both the employee and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and arbitration must be used rather than going to court to enforce legal rights and claims (or going to a government agency which in some states acts like a court in judging claims).***

The agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes include claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment. If the law in the state in which an employee works provides for a government agency hearing to decide questions of law related employment discrimination claims, then the agreement of the employee and the employer is that arbitration must be used instead of a government agency hearing to decide the claim or going to court and having a jury.

Arbitration is conducted by a neutral third party who is an expert in employment matters and it is administered by the American Arbitration Association (AAA). Except for a filing fee, the costs of the arbitration will be paid by the Company unless the employee wants to share in the costs.

The employee and the Company agree to be bound by the decision made by the external, neutral arbitrator. The arbitrator chosen by the employee and employer in accordance with the employer's arbitration rules and procedures will be the sole and exclusive judge of the proper interpretation of the agreement of the parties as well as the rules and procedures of the arbitration process. The arbitrator will have all of the power a judge hearing the dispute would have so that the significant differences between going to arbitration and going to court are that the process will be much faster, less expensive and there will be no jury.

To begin the Arbitration process, an employee should submit a demand for arbitration to the Corporate Employee Relations Department within 30 calendar days after receiving the Peer Review Step III or Speak Easy Phase III decision. The Arbitration Rules and Procedures can be obtained through your local human resources representative.

For further information regarding any of the above processes, please see your local human resources representative.

---

**3. EMPLOYEE ASSISTANCE PROGRAM (EAP)**

CIGNA's Employee Assistance Program is a confidential assessment and referral program staffed by MCC Behavioral Care, Inc. professionals. If you have a personal problem that is unresolved or is affecting your work performance, you may use the Employee Assistance Program (EAP). The EAP is also available to supervisors for workplace issues as well as crisis intervention. The program may be used by family members whose problems may also have an adverse effect on you and your work. Retired employees may also use the program.

# EMPLOYEE HANDBOOK RECEIPT AND AGREEMENT

*To Be Placed In Employee's Personnel File — Payroll & Personnel Records Department*

This is to acknowledge that I have received my copy of the July 1998 employee handbook, *You and CIGNA*. I understand that by accepting employment and being eligible to receive increases in compensation and benefits, I am agreeing to the following two important terms of my employment described in *You and CIGNA*: (1) my employment can be terminated by me or my employer at any time for any reason – therefore, my employment is at the will of either party, and (2) I will use the Company's internal and external employment dispute resolution processes to resolve legal claims against the Company – therefore rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. I understand further that these two terms of my employment replace and supersede any prior agreement concerning these terms and cannot be changed except in writing signed by me and the president of the Company.

Ryan Knibbs
_____
Print Name

Ryan Knibbs                     01-13-01
_____     _____
Signature                          Date

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
_____
Social Security Number

(*The term "the Company" means the particular CIGNA subsidiary or company that employs you.)

7

# TAB 2

# YOU AND CIGNA

*Employee Programs*
*Services and Facilities*

This handbook applies to all U.S. based regular full-time and regular part-time employees of the CIGNA* companies identified on the last page of this handbook. This handbook contains important information about your contract of employment as well as policies and programs that relate to you in your work at CIGNA and about benefits for which you may be eligible. *The terms of your employment mentioned in this Handbook are legally binding, and you may wish to review these terms with your legal counsel.*

Policies, programs and benefit plans in effect for the Company which employs you will apply in any particular situation. The policies and programs are provided to your manager or supervisor who will provide information to you about the details of these policies and programs. Descriptions and information about benefit plans are usually distributed directly to you at your home or at your work location. The plans, not this handbook, control your benefits. As circumstances and competitive conditions change, CIGNA reserves the right to change any or all of such policies, programs and benefit plans in whole or in part at any time, with or without notice to you. However, any benefit entitlement to which you have vested rights (including the right to finish an arbitration which has been started) as of the date of the change will not be taken away as a result of any change.

This handbook contains only two terms of your employment. They are very important. The first is that your employment is not for any fixed period of time. Just as you can terminate your employment, at any time for any reason, the Company can terminate your employment at any time for any reason. The second is that by accepting employment and being eligible to receive increases in compensation and benefits, you agree that you will not go to court or a government agency for a hearing to decide an employment-related claim. Instead, you will resolve all employment related legal disputes (except worker's compensation and unemployment compensation) by going to a neutral third party arbitrator. *Regardless of what anyone may have told you or you may have read before you were hired or after, these two terms of your employment are the full and complete agreement between you and the Company concerning these terms and cannot be changed except by a written agreement between you and your employer signed by the President of the Company.*

---

*The terms "CIGNA" and "CIGNA companies" as used throughout this handbook mean CIGNA Corporation and/or its subsidiaries. CIGNA Corporation owns the subsidiaries for which most employees work. The term "the Company" means the particular CIGNA subsidiary that employs you.



This handbook applies to all U.S.-based regular full-time and regular part-time employees of:

Arizona Health Plan, Inc.
Bankers Standard Insurance Company
Century Indemnity Company
CIGNA Community Choice, Inc.
CIGNA Corporation
CIGNA Dental Health, Inc.
CIGNA Dental Health of California, Inc.
CIGNA Dental Health of Colorado, Inc.
CIGNA Dental Health of Delaware, Inc.
CIGNA Dental Health of Florida, Inc.
CIGNA Dental Health of Kansas, Inc.
CIGNA Dental Health of Kentucky, Inc.
CIGNA Dental Health of Maryland, Inc.
CIGNA Dental Health of New Jersey, Inc.
CIGNA Dental Health of New Mexico, Inc.
CIGNA Dental Health of Ohio, Inc.
CIGNA Dental Health of Pennsylvania, Inc.
CIGNA Dental Health of Texas, Inc.
CIGNA Dental Health Plan of Arizona, Inc.
CIGNA Direct Marketing Company, Inc.
CIGNA Excess and Surplus Insurance Services,
   Inc. (a California corporation)
CIGNA Excess and Surplus Insurance Services,
   Inc. (a Georgia corporation)
CIGNA Excess and Surplus Insurance Services,
   Inc. (an Illinois corporation)
CIGNA Health Corporation
CIGNA HealthCare of Arizona, Inc.
CIGNA HealthCare of California, Inc.
CIGNA HealthCare of Colorado, Inc.
CIGNA HealthCare of Connecticut, Inc.
CIGNA HealthCare of Delaware, Inc.
CIGNA HealthCare of Florida, Inc.
CIGNA HealthCare of Georgia, Inc.
CIGNA HealthCare of Illinois, Inc.
CIGNA HealthCare of Louisiana, Inc.
CIGNA HealthCare of Massachusetts, Inc.
CIGNA HealthCare Mid-Atlantic, Inc.
CIGNA HealthCare of New Jersey, Inc.

CIGNA HealthCare of New York, Inc.
CIGNA HealthCare of North Carolina, Inc.
CIGNA HealthCare of North Louisiana, Inc.
CIGNA HealthCare of Northern New Jersey,
   Inc.
CIGNA HealthCare of Ohio, Inc.
CIGNA HealthCare of Oklahoma, Inc.
CIGNA HealthCare of Pennsylvania, Inc.
CIGNA HealthCare of St. Louis, Inc.
CIGNA HealthCare of Tennessee, Inc.
CIGNA HealthCare of Texas, Inc.
CIGNA HealthCare of Utah, Inc.
CIGNA HealthCare of Virginia, Inc.
CIGNA Holdings, Inc.
CIGNA Indemnity Insurance Company
CIGNA Information Services, Inc.
CIGNA Insurance Company
CIGNA Insurance Company of Illinois
CIGNA Insurance Company of Ohio
CIGNA Insurance Company of Texas
CIGNA International Corporation
CIGNA International Investment
   Advisors, Ltd.
CIGNA Investment Advisory Company, Inc.
CIGNA Investments, Inc.
CIGNA RE Corporation
CIGNA Reinsurance Company
Robert F. Coleman, Inc.
Congen Properties, Inc.
Connecticut General Life Insurance Company
Diversified Insurance Agency, Inc.
ESIS, Inc.
ESIS International, Inc.
Excess and Surplus Insurance Services, Inc.
Healthsource, Inc.
Healthsource Arkansas, Inc.
Healthsource Employer Services, Inc.
Healthsource Georgia, Inc.
Healthsource Indiana Managed Care Plan, Inc.

Healthsource Kentucky, Inc.
Healthsource Maine, Inc.
Healthsource Massachusetts, Inc.
Healthsource New Hampshire, Inc.
Healthsource HMO of New York, Inc.
Healthsource North Carolina, Inc.
Healthsource North Texas, Inc.
Healthsource New York / New Jersey, Inc.
Healthsource Ohio, Inc.
Healthsource Physicians Group of South
   Carolina, Inc.
Healthsource Preferred, Inc.
Healthsource South Carolina, Inc.
Healthsource Tennessee, Inc.
Healthsource Texas, Inc.
INA Corporation
INA Financial Corporation
INA Life Insurance Company of New York
INA Special Risk Facilities, Inc.
INAC Corp.
INAMAR Insurance Underwriting Agency, Inc.
Insurance Company of North America
International Surplus Adjusting Services
Jacomo Primary Care, P.C.
Lewis & Norwood, General Agents, Inc.
Life Insurance Company of North America
MarketlyBe International, Inc.
MCC Behavioral Care, Inc.
MCC Behavioral Care of California, Inc.
National Employee Benefits Corporation
North Central Texas Independent Practice
   Association, P.C.
Pacific Employers Insurance Company
Parkville Primary Care, P.C.
Psychological Managed Care Consultants, P.C.
Recovery Services International, Inc.
Self-Insurers' Management Corporation
Western Agency Management, Inc.

This handbook will not automatically apply to CIGNA companies acquired or created after the date or publication of this handbook.

**Please Note:** Most "CIGNA employees" work for a company which is a subsidiary of CIGNA Corporation. Furthermore, CIGNA Corporation does not provide insurance, investment, health care and other services or products to the public as these services or products are provided by its subsidiaries. Instead, CIGNA Corporation is registered to conduct business in Connecticut, Delaware, New York, Pennsylvania, and Washington, D.C. As an employee of a subsidiary, you may in the course of your employment sign correspondence on behalf of such a subsidiary and represent yourself as its employee; but you may not sign correspondence or in any other way represent yourself as an employee or agent of CIGNA Corporation. On the other hand, all employees of CIGNA Corporation and its subsidiaries may identify themselves and others as being "CIGNA company employees" but only an employee on the payroll of CIGNA Corporation may refer to him/ herself as being a "CIGNA Corporation employee." If you have a question about your employing Company, contact your supervisor or the Payroll and Personnel Operations Department.

# TAB 3

# CIGNA COMPANIES'
# EMPLOYMENT DISPUTE ARBITRATION REQUEST FORM

In accordance with the CIGNA Companies' Employment Dispute Arbitration Rules and Procedures please fill out this form <u>completely</u> and return it within *seven (7) calendar days* after receiving it. *If you fail to return this form within seven (7) calendar days after receiving it, CIGNA will presume that you have no objection to arbitration and to CIGNA paying all fees except the $100.00 you have already submitted.*

**MEDIATION:**     If you wish to request mediation before engaging in binding arbitration, indicate this decision by placing your initials here.

**FEE SHARING:**     If you wish to share equally in all, or some, [*] fees associated with this process, indicate this decision by placing your initials here.
I want to share as follows:

**LEGAL REPRESENTATION:**     Indicate whether you will be represented by an attorney at this process by placing your initials here. _____.
(**Note:** An employee can change his/her decision about representation at any time provided that fourteen (14) calendar days advance notice of the change is given in writing to CIGNA companies).

**Date:** _____     **Signature:**

[*] For example, you can elect to pay only one-half of the arbitrator's fee. In any event, the arbitrator will <u>not</u> be told who is paying his/her fee. **<u>Indicate your election in the space provided under Fee Sharing.</u>**

# TAB 4

**CIGNA COMPANIES'**
**EMPLOYMENT DISPUTE ARBITRATION RULES AND PROCEDURES**

**An employee may obtain a copy of the Companies' Employment Dispute Arbitration Rules and Procedures from a human resource representative at any time.**

**The Arbitrator shall apply these Rules and Procedures strictly. The American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes will apply only where these Rules and Procedures are silent, and in no case shall any AAA rule be applied that is in conflict with or contrary to the substance or intent of these Rules and Procedures. In no case shall an arbitrator apply the Federal Rules of Civil Procedure or any other Local, State or Federal rules of court procedure.**

1. **STARTING THE ARBITRATION PROCESS**

A party who wants to start the arbitration process must submit a written demand for arbitration by certified and first-class mail sent, in the case of an employee-initiated claim, to the Employee Relations Department, CIGNA Companies, 17th floor, Two Liberty Place (TL17C), 1601 Chestnut Street, Philadelphia, PA 19192, along with a check or money order in the amount of one hundred dollars ($100.00) payable to the Company that employs the employee as an initial filing fee. In those jurisdictions where the applicable federal court filing fee is or would be less than $100, the employee must include the same amount as the applicable federal court filing fee. The filing fee may be subject to waiver or reimbursement upon decision by the arbitrator consistent with the standards applicable to proceeding in forma pauperis in the federal courts. In the case of a Company initiated claim, the employee is not be required to pay any filing or other administrative fee. Rather, the Company shall notify the employee of its initiation of the arbitration process by serving a demand for arbitration upon the employee by certified and first class mail to the employee's last known home address. In addition to any required filing fee, any demand for arbitration by either party shall include: (1) a statement of the issue(s) to be resolved and the relief requested, (2) a copy of the final written decision in the internal dispute resolution process (if applicable), (3) the full mailing address to which the initiating party wants all future correspondence about the dispute sent, and (4) a statement indicating whether the initiating party will be represented by an attorney. The demand must be sent within the time limits that would apply to the party's claim if it were being resolved in court and not by arbitration. In the case of a court ordered Arbitration, a demand for Arbitration should be filed in accordance with these Rules and Procedures within thirty (30) calendar days from the date of entry of the courts' order; however, such demand cannot be filed after six (6) months. If the Arbitration is an appeal from a Speak

---

*    **Throughout these Rules and Procedures (except in paragraph 11 dealing with paid time off), "employee" includes current and former CIGNA company employee(s) and applicants for employment.**

Easy, the demand should be submitted within thirty (30) calendar days after receiving the final decision in the internal Speak Easy Process.

After an employee's demand is received, or with the Company's demand for arbitration, Employee Relations will use certified and first class mail to send the employee a copy of these rules and procedures, a Fee Sharing Form and a statement indicating whether the Company is willing to attempt mediation before arbitration if the employee is also willing to attempt mediation. If the Fee Sharing Form is not returned within seven (7) calendar days of its receipt, it will be presumed that the employee has no interest in attempting mediation before arbitration or in paying one-half of all fees associated with this arbitration process.

Within fifteen (15) calendar days after the employee receives the Fee Sharing Form, the Company will file the initiating party's demand and Fee Sharing Form, if any, with the office of the American Arbitration Association ("AAA") closest to where the facts occurred which gave rise to the dispute, together with the applicable administrative fee payable to the AAA.

A party may file any counterclaim against the initiating party that would exist if the dispute were in court. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought. Each party seeking resolution of its, his or her claims pursuant to an agreement to arbitrate under these Rules and Procedures must proceed individually. There shall be no class or representative actions permitted. An Arbitrator shall have no authority to hear claims of or award damages to any person or entity who has not initiated arbitration and selected an arbitrator in accordance with these Rules and Procedures. Also, an arbitrator shall not have authority to consolidate claims or consider individual claims collectively on the ground that such actions promote efficiency or that the individual damages may be too small to proceed economically, except when there is an express agreement between the Company and the employees in writing, or on the stenographic record of the particular arbitration proceeding for which the agreement to proceed collectively is made.

2. <u>Representation</u>

If either party chooses to be represented by an attorney at any point after the initiation of the arbitration procedure, that party must give the other party and the arbitrator written notice. However, if the written notice is received within thirty (30) calendar days of the arbitration hearing or the employee's deposition, then the hearing or deposition shall be continued to a date not less than thirty (30) calendar days after the date of the receipt of the written notice.

Under normal circumstances, the Company will not be represented by an attorney unless the employee chooses to be represented by an attorney. However, in some cases, including those in which the Company has initiated arbitration proceedings, the Company may choose to be represented by an attorney even if the employee indicates that he/she will not be represented by an attorney.

If the employee chooses to be represented by an attorney at any point in the arbitration process, the Company will have the right to be represented by an attorney from that point until the conclusion of the process.

3.    **Appointment of a Mediator**

Unless an employee or the Company has refused mediation, immediately after the demand is filed with the AAA, a mediator will be appointed as follows:

(a)    The AAA will send to the employee and the Company identical lists of at least three proposed mediators. The individuals on the lists will be knowledgeable about employment laws and in most cases will be lawyers.

(b)    Both the employee and the Company will have ten (10) calendar days from the date the AAA mails them the list, unless a reasonable extension has been obtained, to cross off any name(s) to which the party objects; number the remaining names in order of preference; and return the list to the AAA. If a party does not return the list within the applicable timeframes, that party will be treated as having found all persons on the list to be equally acceptable.

(c)    The AAA shall appoint one mediator from the names remaining on the lists. If possible, the AAA will try to honor the preferences of both the employee and the Company.

If the employee and the Company do not agree on any of the listed names, or if an acceptable mediator is unable to act, the AAA will send to each party an additional list and the above procedure will be followed one more time. If the employee and the Company do not agree on a mediator from the second list, or if the mediator agreed upon cannot serve, the AAA will appoint a mediator from among other members of its panel of employment dispute mediators. The AAA will notify the employee and the Company in writing of the appointment of the mediator.

The parties and the mediator will confer and agree on a mutually agreeable date to hold the mediation. The AAA will notify the parties in writing at least fourteen (14) calendar days in advance of the mediation session of the date, time and place of the session. The mediation session should take place as soon as possible after the mediator is appointed.

4.    **Qualifications of the Mediator**

The mediator must be a neutral person. That is, no one may be a mediator in any matter in which that person has any financial or personal interest in the result. Before agreeing to mediate a dispute, the prospective mediator shall disclose to the AAA any circumstance likely to prevent a prompt mediation or to create a presumption of bias. Upon receipt of such information, the AAA will communicate the information to the employee and the Company for comment. Following comments, the AAA may disqualify the prospective mediator and follow the above process to appoint a new mediator.

5.    **The Mediation Session**

At a scheduled mediation session, the mediator talks to each party, then works to help them reach an agreeable resolution. The mediator's goal is to give both parties reasons to move their views closer together. Through a process of give and take the mediator tries to bring the parties to a common ground. The mediator cannot issue a settlement. Both parties must agree. If either party is unwilling to compromise, there is no reason to attempt mediation. If the dispute is not resolved in mediation, or either party chooses to skip that stage, arbitration is the mandatory and the final step.

6.    **Closure of Mediation**

Mediation will end as soon as: (a) the parties reach a mutually satisfactory resolution of the dispute, or (b) one of the parties refuses to continue mediation, or (c) the mediator decides that further mediation would not be productive.

7.    **Appointment of an Arbitrator**

If either party refuses to attempt mediation or if mediation does not resolve the dispute and a party desires to proceed with arbitration, the party should within thirty (30) calendar days of either the refusal to mediate or closure of mediation, submit a written demand in accordance with paragraph 1, if he/she/it has not already done so.   An arbitrator will be appointed as follows:

(a)     Immediately after the Company files the employee's or its demand for arbitration (when the parties do not agree to mediate) or, in the case of a failed mediation, immediately after the mediator notifies the AAA that the mediation has failed, and the initiating party's written demand has been submitted, the AAA will send to the employee and the Company an identical list of all arbitrators who are members of the regional Employment Dispute Resolution Roster of the AAA.  The individuals on the lists will be knowledgeable about employment laws and have significant experience in the resolution of employment disputes.  In order to be qualified to serve as an arbitrator under these Rules and Procedures, the arbitrator must be an attorney licensed to practice in the state in which the employee works or if the employee works in a remote location, in the state in which the Company's office to which the employee reports is located.   No one on the lists will have served as mediator in the same dispute, unless both the employee and the Company send a written request to the AAA that the mediator's name be included in the lists.

(b)     Both the employee and the Company will have no more than ten (10) calendar days from the date the AAA mails them the list, unless a reasonable extension has been obtained, to cross off any name(s) to which the party objects; number the remaining names in order of preference; and return the list to the AAA.

(c)     If a party does not return the list within the applicable timeframes, that party will be treated as having found all persons on the list to be equally acceptable.

(d)     The AAA shall appoint one arbitrator from the names remaining on the lists.  If possible, the AAA will try to honor the preferences of both the employee and the Company.

(e)      If the employee and the Company do not agree on any of the listed names, or if an acceptable arbitrator is unable to act, the AAA will send to each party an additional list and the above procedures will be repeated.  If the employee and the Company do not agree on an arbitrator who is otherwise qualified under these Rules and Procedures from the second list, or if the arbitrator agreed upon is unable to serve, the AAA will appoint an arbitrator who is qualified under these Rules and Procedures from among other members of its Employment Dispute Resolution Roster.  The AAA will notify the employee and the Company in writing of the appointment of the arbitrator.

8.    **Qualifications of the Arbitrator**

The arbitrator must be a neutral person.  That is, no one may be an arbitrator in any matter in which that

person has any financial or personal interest in the result.  An arbitrator under these Rules and Procedures

must be an attorney licensed to practice in the state in which the employee works or if the employee works

in a remote location, in the state in which the Companies' office to which the employee reports is located.

An arbitrator under these Rules and Procedures must be knowledgeable about employment laws and have

significant experience in the resolution of employment disputes.  Before agreeing to arbitrate a dispute, the

prospective arbitrator shall disclose to the AAA any circumstance likely to prevent a prompt arbitration or

to create a presumption of bias.  Upon receipt of such information, the AAA will communicate the

information to the employee and the Company for comment.  Following comments, the AAA may

disqualify the prospective arbitrator.  If an arbitrator is disqualified or unable to serve for any reason, the

procedure in paragraph 7 above shall be used to appoint a new arbitrator.


9.    **Power of the Arbitrator**

Arbitration under these Rules and Procedures will be governed by the Federal Arbitration Act (Title 9

U.S.C. Sec. 1 et seq.).  The arbitrator will have discretion to resolve any question or dispute that may arise

before, during and after the arbitration hearing.  The arbitrator's power is limited only as follows:  The

arbitrator must apply statutory and case law to the facts of the dispute and follow conflict of laws principles.

The arbitrator will apply the burden of proof required by applicable federal, state or local law.  However

federal, state or local rules governing court or judicial procedure are not applicable to arbitrations under

these rules unless specifically agreed to by both parties.  The arbitrator will have the power to award all

equitable and legal remedies that would be available in a court of law under applicable law.  The arbitrator

will have no power to change the Companies' policies and procedures (including this one), to change the

law applicable to the facts of the dispute, or to substitute his/her business judgment for that of the Company.

The Arbitrator shall apply these Rules and Procedures strictly.  The American Arbitration's National Rules

for the Resolution of Employment Disputes will apply only where these Rules and Procedures are silent,

and in no case shall any AAA rule or arbitrator's decision be applied that is in conflict with or contrary to

the substance or intent of these Rules and Procedures.  In no case shall the arbitrator apply the Federal

Rules of Civil Procedure or any other Local, State or Federal rules of court procedures.  No class-wide

arbitrations are allowed under the CIGNA Companies' Arbitration Policy or these Rules and Procedures.

The arbitrator has no jurisdiction to certify any group of current or former employee's, or applicants for

employment as a class in any arbitration proceeding.  An arbitrator who is appointed but does not meet the

qualifications listed in paragraph 8 above the arbitrator shall disqualify him/herself unless all parties to the dispute to be arbitrated agree specifically and on the record to waive their objection to continued appointment of the arbitrator.  Any disputes regarding application of these rules and procedures will be resolved solely by the arbitrator.

10.    **Date, Time and Place of Hearing**

The AAA, in cooperation with the arbitrator and the parties, will set the date, time and place of a hearing (which normally will take place within ninety (90) calendar days of the appointment of the arbitrator).  At least sixty (60) calendar days before the date set for the hearing, the AAA will notify the parties in writing of the date, time and place of the hearing.

11.    **Discovery (Fact Gathering)**

(a)    Not less than forty-five (45) calendar days before the date set for the hearing, each party will submit to the other:  (1) the names, work or home addresses and job titles of all witnesses the party expects to have testify at the hearing, and if a witness is not an employee of a CIGNA Company, sufficient identifying information must be supplied as well, and (2) a copy of all exhibits and/or documents that the party expects to produce at the hearing.

(b)    A party will be entitled to take no more than two days of depositions - that is, asking questions of and getting sworn answers from the parties, other employees and any other witnesses, who have direct knowledge of the facts surrounding the dispute.  A party may not depose any employee of any CIGNA company who certifies in writing to the arbitrator that he/she has no direct knowledge of the facts surrounding the dispute.

Whoever asks for a deposition must:  (1) give the other party and the witness at least ten (10) calendar days advance notice so that they both may be present and arrange for process to compel attendance, if necessary; and (2) arrange for a court reporter to attend and record the deposition; and (3) pay for the costs associated with the hiring of a court reporter, producing a deposition transcript for their own use and securing office space.

(c)    A party who is properly notified of the schedule for his/her deposition and who fails to appear will be liable to the other party for the reasonable costs incurred by the other party

in setting up the deposition.

(d)     All discovery is to be completed at least twenty (20) calendar days before the date set for
the hearing.  In addition, at the completion of discovery, each party must then, within ten
(10) days, supplement its list of witnesses and exhibits, if necessary.  If any exhibit or
document was not previously produced to the other party, a copy of it also must be
produced at this time.

(e)     The scope and timing of discovery may be expanded, altered, amended or otherwise
changed to accommodate the circumstances of a particular arbitration at the discretion of
the arbitrator.  However the arbitrator will limit exercise of that discretion by keeping in
mind any agreement of the parties and that the purpose of arbitration is speedy and cost-
effective resolution of individual disputes.

All discovery disputes will be resolved by the arbitrator in accordance with these rules and procedures.

## 12.   Summary Disposition

The Arbitrator shall consider and timely rule on any motion for summary disposition, keeping in mind the
purpose of arbitration is a speedy and cost effective resolution of disputes.

In determining whether to grant summary disposition, the arbitrator will apply the law in the same manner
as a Federal court would in the same jurisdiction.

## 13.   Attendance at Hearing

The employee and the Company are entitled to call witnesses to testify at the hearing and to cross-examine
witnesses called by the other party.  If a party attempts to call as a witness any employee of any CIGNA
company who (1) is not listed as a witness by a party, and (2) certifies in writing to the arbitrator that he/she
has no direct knowledge of the facts surrounding the dispute, the arbitrator may disallow the testimony.

Witnesses at depositions and hearings who are employees of a CIGNA company will be permitted to testify
without loss of compensation or benefits for time away from work.  The Company, however, retains the
right to limit the number of employees who may be absent from work at one time.  However, an employee
who is a party must use vacation and/or personal time off to attend depositions and the hearing.  If the

Page 8

employee has no vacation or personal time off available, the employee will be permitted to take unpaid time off for the hearing. The employee is not permitted to use work time to prepare for any aspect of the arbitration process.

The arbitrator will have the power to exclude from the hearing any witness other than a party or other essential person during the testimony of any other witness. The arbitrator will determine whether any other person(s) may attend the hearing. The arbitrator will not have the power to exclude a representative of a government agency from attending the hearing provided one of the parties has given at least five (5) days advance written notice to the arbitrator and the other party of their desire and intention to have the representative present. The arbitrator will maintain the privacy of the hearings and any decision unless he/she decides that it would be appropriate in the circumstances to make the decision public or is required by law to do so.

14.   **Postponement**

The arbitrator, for good cause shown, may postpone any hearing or deadline upon the request of a party or upon the arbitrator's own initiative, and will also grant a postponement if both the employee and the Company agree. However, at all times the arbitrator must consider that one of the purposes of this process is to resolve disputes quickly.

15.   **Oaths**

Before starting the hearing, the arbitrator will take an oath of office. The arbitrator will require witnesses to testify under oath.

16.   **Stenographic Records**

A court reporter shall keep a stenographic record of the proceedings. A party requesting a transcription or copy of the stenographic record must pay the court reporter's fees for producing the requested record. If the other party wants a copy of the stenographic record, then the total cost shall be shared equally by both parties. If a party wants to record the proceedings by audio tape, that party must notify the other party and ask permission from the arbitrator at least seven (7) calendar days in advance of the hearing. The arbitrator will have the power to grant or deny the request and to tape the proceedings for his/her own use.

17. **Proceedings**

Normally, the hearing will be completed within one day.  In unusual circumstances and for good cause shown, the arbitrator may schedule as much additional hearing time as the arbitrator in his/her sole discretion thinks is needed, and this extra time will be scheduled as soon as practicable.  When a party asserts in a timely fashion that the matter(s) raised by any other party is (are) not arbitrable, the arbitrator will render a decision on the arbitrability of that issue before scheduling and conducting a hearing on the merits of the claim(s).  The hearings will be conducted by the arbitrator in whatever manner will most easily and quickly permit full presentation of the evidence and arguments of both parties, however, the arbitrator must apply these Rules and Procedures throughout the Proceedings.

The arbitrator's decision will be subject to judicial review and confirmation in accordance with the Federal Arbitration Act.

18. **Arbitration in the Absence of a Party**

The arbitration may proceed in the absence of any party or representative who, after receiving proper advance notice of the hearing, does not get a postponement from the arbitrator and does not appear at the hearing.  The arbitrator will not make a decision against a party just because the party does not appear at the hearing.  The arbitrator will require the party that does appear to submit as much evidence as the arbitrator requires to make a decision, although nothing herein shall be construed to relieve a non-appearing party of any burden of proof or production of evidence that would otherwise apply.

19. **Evidence**

The arbitrator shall be the sole judge of the relevance and materiality of any evidence offered.  It is not necessary for the arbitrator to strictly follow legal rules of evidence.

20. **Evidence by Affidavit and Filing of Documents**

The arbitrator may accept evidence in the form of a notarized affidavit of a witness; will consider any objections to the affidavit by the other party; and will then give the affidavit the weight the arbitrator determines it merits.  All documents to be considered by the arbitrator must be presented at the hearing. The arbitrator will not receive or consider an exhibit or document that was not already supplied to the other party under paragraph eleven (11).  However, the arbitrator should consider the testimony of a witness who testifies his/her recollection has been refreshed by a document, or rebuttal evidence which could not have been reasonably anticipated by the party offering the rebuttal evidence, even though the document was not produced under paragraph eleven (11).  Either party may request that the arbitrator consider post-hearing briefs (a written summary of the issues, evidence and arguments).  The arbitrator will decide how much time each party may have to submit briefs, and set limits to the length of the briefs, but the arbitrator should be guided by the desire that the dispute be resolved quickly.   Post-hearing briefs will be submitted to the arbitrator through the AAA.

21. **Closing of Hearing**

When the arbitrator is satisfied that the record is complete, he/she in his/her sole discretion will close the hearing.

22. **Reopening of Hearing**

At any time before the decision is issued, the arbitrator in his/her sole discretion may reopen the hearing either on the arbitrator's initiative or upon the request of a party.

23. **Waiver of Procedures**

Any party who knows or suspects that any provision or requirement of these procedures has not been complied with and who does not object in writing, or on the stenographic record of a court reporter present at the proceeding, but instead proceeds with the arbitration shall be treated as having waived the right to object.

24.     **Time of Award**

The arbitrator will decide the employment dispute promptly unless otherwise agreed by the parties or specified by law.  The arbitrator will issue a decision within thirty (30) calendar days of the close of the hearing, or as soon as possible thereafter if both parties agree.

25.     **Decision**

(a)     Form  -  The arbitrator's decision will be in writing and signed by the arbitrator.  The decision will include an opinion giving the reasons for the decision.  The decision will be implemented in the manner required by law.

(b)     Scope of Relief  -  The arbitrator will have full power and authority to award any remedy that either party would have been entitled to had the employee taken the dispute to a government agency or to a court.  The arbitrator will apply the law of the United States of America and the state and locality in which the employee worked under applicable conflict of law principles.  In any award, the arbitrator must deduct lawful set-offs, including (if the law so provides) but without limitation, unemployment compensation, interim earnings or income, severance payments and the compensation and benefits of any other employment.  The arbitrator will deduct for failure of the employee or Company to mitigate his/her/its damages, if applicable.

26.     **Delivery of Decision to Parties**

The AAA will notify the employee and the Company of the arbitrator's decision by mailing and/or faxing it to the parties (or their representative) at their last known address.

27.     **Enforcement**

The arbitrator's decision may be enforced under the provisions of the Federal Arbitration Act (Title 9 U.S.C. Sec. 1 et seq.).  If, despite the intent of these Rules and Procedures that the arbitrator's decision be final and binding, either party tries to overturn the decision, that party must return everything of value received as a result of the decision, before starting any action to overturn the decision, and if the effort to overturn the arbitrator's decision is unsuccessful, must pay the other party's attorney's fees.

28.    **Judicial Proceedings and Exclusion of Liability**

(a)    Neither the AAA nor any arbitrator in a proceeding under these Rules and Procedures may be sued or made a party in any judicial proceedings related to the arbitration. Participation in arbitration proceedings under these Rules and Procedures shall be deemed to be consent and agreement not to sue the AAA or the arbitrator.

(b)    Parties to these Rules and Procedures shall be deemed to have consented to the entry of a judgment upon the arbitration decision in any federal or state court with jurisdiction over the parties and the dispute.

29.    **Fees, Expenses and Costs**

Unless the employee chooses in his/her demand for arbitration to share equally in such expenses, The Company will pay 100% of any mediation/arbitration administrative fees required by the AAA in excess of any initial filing fee paid by the employee. Except for the salary of witnesses who are active employees of a CIGNA company (which will be paid by the Company), the party who calls a witness to testify at the hearing will pay reasonable expenses or fees requested by that witness. Unless the arbitrator decides otherwise in accordance with applicable law (for example, the law provides that prevailing parties may be awarded reasonable attorney fees), each party shall pay its own legal fees and expenses. The payment of expenses for discovery and stenographic records is covered by paragraphs 10 and 14. All other fees, expenses and costs of the arbitration, such as the arbitrator's travel and other expenses, costs for any witness produced at the direction of the arbitrator, and the expenses of a representative of AAA, if any, shall be paid completely by the Company (unless the employee chooses in his/her demand for arbitration to share in such expenses). Postponement of hearing fees, if any, will be paid by the party that requested the postponement, subject to applicable law. The arbitrator's fees will be paid through the AAA and the arbitrator should not be told who will pay all or a portion of his/her fees.

30.    **Serving of Notice**

Service of any notice, form, process, complaint, award, judgment, subpoena, or any other document required or associated with these procedures may be served on a party by (a) certified mail, return-receipt-requested, and first class mail addressed to the party or its authorized representative at the last known address, or (b) personal service acknowledged in writing by the party or authorized representative served. A reasonable opportunity to be heard shall be granted to a party claiming insufficient notice or service.

31. __Amendment or Termination of Arbitration Process__

The Company's policy regarding arbitration of employment related disputes will not be changed except in writing by the Vice President, Employee Relations, and all changes will be available from Human Resources. The Company will distribute notice of all such changes. After a party has commenced proceedings under these Rules and Procedures, the Rules and Procedures cannot be changed by either you or the Company or the arbitrator except in writing signed by you and the President of the Company. No change in the Arbitration Policy or in the Arbitration Rules and Procedures will affect a party who has already started the arbitration process at the time the change is made, unless both the employee and the Company agree to the change in writing.

32. __Interpretation and Application of Process__

The arbitrator shall interpret and apply these Rules and Procedures in accordance with applicable law of contract interpretation.

Revised 9-2003

# EXHIBIT 4



**LITTLER MENDELSON®**

A PROFESSIONAL CORPORATION

October 13, 2005

Bradley E. Strawn
Direct: 267.402.3047
Direct Fax: 267.402.3131
bstrawn@littler.com

**Via Facsimile (215) 592-8550 and U.S. Mail**
Thomas More Holland, Esquire
Law Offices of Thomas More Holland
1522 Locust Street
Philadelphia, PA  19102

Re:    Knibbs v. CIGNA Corporation, et al., Civ. Action No. 05-cv-4739

Dear Mr. Holland:

As we discussed October 11, 2005, enclosed is a proposed Stipulation of Extension of Time to Answer, Plead or Otherwise Move for your consideration. Please advise if the Stipulation meets with your approval and if you give your consent to file.

Further, we are writing to confirm our agreement regarding proceeding in arbitration. Specifically, if Plaintiff Ryan Knibbs dismisses his federal court proceeding and initiates arbitration, no Defendant will raise as a bar to proceeding in the arbitration forum any argument or contention that Mr. Knibbs failed to first exhaust the multi-step Speak Easy or Peer Review processes contained in the CIGNA Companies' Employment Dispute Resolution Program ("EDRP").

Finally, you asked that we provide the form necessary to initiate arbitration. We previously provided the necessary form, titled CIGNA Companies' Employment Dispute Arbitration Request Form, as Exhibit 3 to our October 7, 2005, letter to you. The applicable arbitration rules and procedures were also attached as Exhibit 4. Please let us know if you are unable to locate these documents. You will note that Section 1 of the arbitration rules and procedures states that a written demand for arbitration must be submitted directly to CIGNA's Employee Relations Department. Since we already are involved on behalf of the defendants, you should submit the Employment Dispute Arbitration Request Form directly to the undersigned, along with a check or money order in the amount of one hundred dollars ($100) payable to Connecticut General Life Insurance Company for the initial filing fee. We will consider the Complaint you filed in federal court to satisfy the requirements in Section 1 of the arbitration rules and procedures for a statement of the issue(s) to be resolved and relief requested.

ARIZONA

CALIFORNIA

COLORADO

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

MASSACHUSETTS

MINNESOTA

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

PENNSYLVANIA

TEXAS

WASHINGTON

Mr. Holland
October 13, 2005
Page 2

Please do not hesitate to contact the undersigned with any questions.

Sincerely,

Bradley E. Strawn

Enclosures

cc: Christine L. Ciarrocchi, Esq. (w/out enc.)
John A. Steinmacher
Eugene L. Piro
Kristine Grady Derewicz (w/out enc.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RYAN KNIBBS,                                    :
                                                :
        Plaintiff            :       Civil Action No. 05-CV-4739
                                                :
        v.                   :       JURY TRIAL DEMANDED
                                                :
CIGNA Corporation, Connecticut General          :
Life Insurance Company (CGLIC), John A.         :
Steinmacher, and Eugene L. Piro,                :
                                                :
        Defendants           :

## STIPULATION OF EXTENSION OF TIME
## TO ANSWER, PLEAD OR OTHERWISE MOVE

Pursuant to Local Rule 7.4, Plaintiff Ryan Knibbs ("Plaintiff") and Defendants CIGNA Corporation, Connecticut General Life Insurance Company, John A. Steinmacher, and Eugene L. Piro (collectively "Defendants"), by their respective undersigned counsel, hereby stipulate and agree that the time within which Defendants may answer, plead or otherwise move in response to Plaintiff's Complaint in the above-captioned matter shall be extended for a period of fourteen (14) days up to and including October 31, 2005. The extension is for a period not exceeding thirty (30) days. No prior extension has been granted by the Court.

By:  /s/ Thomas Moore Holland
      Thomas Moore Holland, Esquire
      Law Offices of Thomas Moore Holland
      Grace Hall
      1522 Locust Street
      Philadelphia, PA 19102
      (215) 592-8080

      Attorney for Plaintiff Ryan Knibbs

By:  /s/ Kristine Grady Derewicz
      Kristine Grady Derewicz, Esquire
      Littler Mendelson, P.C.
      Three Parkway; Suite 1400
      1601 Cherry Street
      Philadelphia, PA 19102
      (267) 402-3003

      Attorney for Defendants CIGNA
      Corporation, Connecticut General
      Life Insurance Company, John A.
      Steinmacher, and Eugene L. Piro

Dated: October 13, 2005

Dated: October 13, 2005

## CERTIFICATE OF SERVICE

I, Bradley E. Strawn, certify that I caused the foregoing Stipulation of Extension of Time

to Answer, Plead or Otherwise Move to be served on, via first class mail upon the following:

Thomas Moore Holland, Esquire
Law Offices of Thomas Moore Holland
Grace Hall
1522 Locust Street
Philadelphia, PA 19102


_____
Bradley E. Strawn

Dated:  October 13, 2005

Firmwide:80504299.1 025360.1091
10/11/05 2:10 PM

# EXHIBIT 5

LAW OFFICES OF

# THOMAS MORE HOLLAND

THOMAS MORE HOLLAND *
OLIVER M. BATHER *
PATRICK F. FLANIGAN *

GRACE HALL
1522 LOCUST STREET
PHILADELPHIA, PA 19102

Also licensed in:
*      New Jersey

(215) 592-8080
FAX  (215) 592-8550
lawyers@tmhlaw.com

## FACSIMILE COVER SHEET

**DATE:**  10/21/05

**TO:**  Brad Strawn

**FAX #:**  262 - 402 - 3131

**PHONE #:**  - 3042

**FROM:**  TMH

**PAGES TO FOLLOW:** One (Not including cover sheet)

**RE:**  Knibbs v. Cigna

**COMMENTS:**

IN CASE OF INCOMPLETE TRANSMISSION OR DIFFICULTY IN RECEIVING, CALL  (215) 592-8080.

10/21/2005 FRI 15:04 FAX 1 215 592 8550 thomas more holland
Case 2:05-cv-04789-LDD   Document 6   Filed 10/31/05   Page 65 of 76
[002/002]

# CIGNA COMPANIES'
## EMPLOYMENT DISPUTE ARBITRATION REQUEST FORM

In accordance with the CIGNA Companies' Employment Dispute Arbitration Rules and Procedures please fill out this form <u>completely</u> and return it within *seven (7) calendar days* after receiving it. *If you fail to return this form within seven (7) calendar days after receiving it, CIGNA will presume that you have no objection to arbitration and to CIGNA paying all fees except the $100.00 you have already submitted.*

**MEDIATION:**     If you wish to request mediation before engaging in binding arbitration, indicate this decision by placing your initials here.

**FEE SHARING:**     If you wish to share equally in all, or some,* fees associated with this process, indicate this decision by placing your initials here.
I want to share as follows:

**LEGAL REPRESENTATION:**     Indicate whether you will be represented by an attorney at this process by placing your initials here.
(Note:  An employee can change his/her decision about representation at any time provided that fourteen (14) calendar days advance notice of the change is given in writing to CIGNA companies).

Date: __10/21/05__      Signature: _____
for Plaintiff
Kribbs

* For example, you can elect to pay only one-half of the arbitrator's fee. In any event, the arbitrator will <u>not</u> be told who is paying his/her fee. <u>Indicate your election in the space provided under Fee Sharing.</u>

# EXHIBIT 6

LEXSEE 2001 US DIST. LEXIS 9453

**ALBERTA BYRD BRENNAN, ETHYL L. WYCHE, SHARON D. MOORE, ROBIN BRIDGES JOHNSON, BRENDA GRAVES, NAOMI L. MOMENT, and DEBORAH REID, Plaintiffs, v. ACE INA HOLDINGS, INC., INSURANCE COMPANY OF NORTH AMERICA, BRANDYWINE HOLDINGS, and CENTURY INDEMNITY, Defendants.**

CIVIL ACTION NO. 00-2730

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2001 U.S. Dist. LEXIS 9453

June 8, 2001, Decided
June 13, 2001, Filed

**DISPOSITION:** [*1] Defendants Motion to Stay Proceedings and to Compel Arbitration (Document No. 5), GRANTED.

**CORE TERMS:** arbitration, arbitration agreement, compel arbitration, discovery, contract of adhesion, et seq, mandatory, unenforceable, awarding, arbitration provision, arbitrator, Civil Rights Act, amended version, footing, bonuses, discretionary

**LexisNexis(R) Headnotes**

**COUNSEL:** For KESTEN DEVELOPMENT CORP., plaintiff: Paul Joseph Fishman, Friedman, Kaplan & Seiler, Barry R. Fischer, Deborah R. Srour, Lacaz Martins, Srour & Fischer L.L.P., New York, NY.

**JUDGES:** Hon. Petrese B. Tucker, U.S.D.J.

**OPINIONBY:** Petrese B. Tucker

**OPINION:**

### MEMORANDUM AND ORDER

TUCKER, J.

Presently before this Court is a Motion to Stay Proceedings and to Compel Arbitration (Document No. 5) filed by Defendants on September 13, 2000 and an Amended Brief in Support of Defendants' Motion to Stay Proceedings and to Compel Arbitration (Document No. 8) filed by Defendants on September 15, 2000. For the reasons set forth below, upon consideration of the motion and Plaintiff's Response (Document No. 10, 11), this Court grants the Motion to Stay Proceedings and to Compel Arbitration in the above-captioned action.

### BACKGROUND

Plaintiffs assert a cause of action for race discrimination in violation of several state and federal statutes. n1 The original complaint, filed on May 30, 2000 was amended on September 7, 2000 to assert a class action against the defendants. On September 13, 2000 defendants [*2] moved for a stay of judicial proceedings and request that the court compel arbitration based on the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1. Plaintiffs filed their response on October 20, 2000. Defendants submitted a reply brief on November 10, 2000.

n1 Plaintiffs also claim violation of 43 P.S. § 951, et seq. and defendants state their argument in the alternative under 42 Pa. C.S.A. § 7304; however, neither side develops their positions regarding these state laws.

The FAA has been adopted in many courts throughout the country as well as by the Third Circuit and Eastern District of Pa. Its espoused purpose was to reverse the longstanding judicial hostility towards arbitration agreements and to place arbitration agreements upon the same footing as other contracts. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991). Plaintiffs assert that arbitration is not appropriate in these circumstances mainly because the plaintiffs [*3] do not recall signing the agreement for arbitration. However, at least one of the documents, the Employee Handbook Receipt and

Agreement, its amended version, and a further amended version after the acquisition of CIGNA by ACE, bears the signature of each plaintiff. n2 Plaintiffs also assert that the arbitration provisions are unenforceable because the plaintiffs knew that if they did not sign, they would not be eligible for future raises, benefits, and bonuses. Finally, plaintiffs assert that the discrepancy between the federal rules relating to discovery and the awarding of attorney fees and the limits on the procedural rules imposed by the provisions of the arbitration agreement infringe on the substantive rights of the plaintiffs.

> n2 Plaintiffs also claim that the appropriate amended versions of the arbitration agreement were not signed by some of the seven plaintiffs, factually depending on when the employee terminated his/her employment with the defendant.

## DISCUSSION

The questions at issue in [*4] the present action are: 1) whether it is appropriate for this court to order arbitration; 2) whether the arbitration agreement between the parties is unenforceable because it is a contract of adhesion; and 3) whether the limits imposed by the arbitration provision relating to discovery and the awarding of attorney fees constitute a denial of plaintiffs' substantive rights.

A. It is appropriate for this Court to order arbitration.

Prior to ordering arbitration, a district court must determine 1) whether the parties entered into a valid arbitration agreement; and 2) whether the specific dispute falls within the scope of the agreement. Smith v. The Equitable, 27 F. Supp. 2d 565 (E.D. Pa. 1998), appeal dismissed, 209 F.3d 268 (3rd Cir. 2000). Any doubts regarding the scope of the arbitration agreement should be resolved in favor of arbitration. Great Western Mortg. Corp. v. Peacock, 110 F.3d 222, 228 (3rd Cir. 1997). Each plaintiff signed a version of the arbitration agreement and the arbitration agreement covers in scope the dispute in question. The arbitration agreement sufficiently covers all of the federal and state statutes [*5] which plaintiffs allege defendants have violated. n3 Thus, it is proper for this Court to order arbitration.

> n3 Plaintiffs allege violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1870, 42 U.S.C. § 1981, and PHRA, 43 P.S. § 951 et seq.

The Supreme Court decision in Gilmer weighs heavily in determination of this matter. The Supreme Court held that employment discrimination claims are subject to valid arbitration agreements under the FAA. 500 U.S. at 32. Moreover, this was adopted in the Third Circuit in Great Western, 110 F.3d at 224-27 ("Mandatory arbitration provision of the FAA applie[s] to [plaintiff's] employment agreement.").

B. The Arbitration Agreement is Enforceable and is not a Contract of Adhesion.

Plaintiffs contend that they were forced to either sign the Handbook Receipt/Agreement or forfeit future opportunities for compensation, benefits [*6] or bonuses. Similar to the plaintiffs in Gilmer and Great Western, the plaintiffs here are professionals well capable of bargaining for their employment. n4 Gilmer 500 U.S. at 33, Great Western at 229. As the Third Circuit held, mere inequality in bargaining power between employer and employee does not make an arbitration agreement unenforceable. Seus v. John Nuveen & Co., 146 F.3d 175, 184 (3rd Cir. 1998), cert. denied, 525 U.S. 1139, 143 L. Ed. 2d 38, 119 S. Ct. 1028 (1999), see also Gilmer 500 U.S. at 33. Moreover, an arbitration agreement does not meet the standard for a contract of adhesion unless one party lacks a meaningful choice and the provision is one-sided as to be oppressive. Seus at 184. No such situation exists here. Therefore, the arbitration agreement is not a contract of adhesion and should be enforced as written and agreed to by the parties. n5

> n4 In fact, two of the seven plaintiffs have law degrees. Pltfs. Response at 3-5.

> n5 Keeping in mind the FAA's purpose of placing arbitration agreements upon the same footing as other contracts also bears great latitude towards enforcing the arbitration agreement.

[*7]

C. The Limits Imposed on the Discovery Process by the Arbitration Provision Relating to Discovery and the Awarding of Attorney Fees Do Not Constitute a Denial of Plaintiffs' Substantive Rights Under Title VII.

Plaintiffs also contend that the arbitration procedure so limits plaintiffs' discovery requirements that they are tantamount to a denial of the substantive rights under Title VII. The Gilmer court addressed this issue and found that although procedure might not be as extensive as in federal court, by agreeing to arbitrate, the party trades procedures and opportunities for court review for

simplicity, informality, and expedition of arbitration. Gilmer at 31, see also Great Western at 231 n. 37.

In addition, plaintiffs contend that the arbitration agreements deny them substantive rights because of a difference between the remedies (i.e. awarding attorney fees) available in a court and the remedies available in arbitration. However, the rules of procedure for the arbitration policy in effect at CIGNA/ACE provide that "the arbitrator will have full power and authority to award any remedy that either party would have been entitled to had the employee [*8] taken the dispute to a government agency or to a court. The arbitrator will provide the rules of law of the [U.S.] and state. . . in which the employee worked." Dfs. Initial Brief at tab "2" to Ex. "C." Furthermore, the rules provide that a plaintiff has the burden of showing entitlement to fees and the reasonableness of the fees, and it is up to the arbitrator to enter an award of fees, if appropriate under the law. In short, an award of attorneys' fees would be consistent with the law: mandatory where mandatory by statute and discretionary where discretionary as a matter of law. Therefore, the limits imposed by the arbitration provision relating to discovery and the awarding of attorney fees do not constitute a denial of plaintiffs' substantive rights.

## CONCLUSION

The Court does not find that the plaintiff's arguments vitiate the established rules under the FAA nor do they provide adequate reasoning for excepting the plaintiffs from their arbitration agreements; therefore the Court grants defendants' Motion to Stay Proceedings and Compel Arbitration. An appropriate Order follows.

## ORDER

AND NOW, this 8th day of June, 2001, upon consideration of Defendants [*9] Motion to Stay Proceedings and to Compel Arbitration (Document No. 5), and Plaintiff's Response thereto (Documents Nos. 10, 11), it is hereby ORDERED and DECREED that Defendant's Motion is GRANTED.

BY THE COURT:

Hon. Petrese B. Tucker, U.S.D.J.

# EXHIBIT 7

Westlaw.

Not Reported in F.Supp.2d                                                Page 1

Not Reported in F.Supp.2d, 1998 WL 414723 (E.D.Pa.)

**(Cite as: 1998 WL 414723 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Joan N. VENUTO
v.
INSURANCE COMPANY OF NORTH AMERICA
**No. Civ.A. 98-96.**
**No. 98-96.**

July 22, 1998.

*MEMORANDUM*

GILES, J.

*1 Joan N. Venuto was employed by Insurance Company of North America ("ICNA"), as an at-will employee. After being diagnosed with a medical disability, Venuto went on a leave of absence. While she was on leave, ICNA implemented a new policy requiring arbitration of certain disputes. Venuto received notice of that policy by mail and, when she returned to work, by interoffice mail. After returning from leave, Venuto was demoted and denied promotional and training opportunities. She then brought action against ICNA pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* for discrimination, asserting that she was ultimately demoted and denied opportunities solely as a result of her disability and record of impairment.

Now before the court is ICNA's Motion to Compel Arbitration and Stay Judicial Proceedings. Venuto contends that she is not bound by ICNA's arbitration policy since it was unilaterally adopted and implemented by ICNA without her input or assent. For the reasons which follow, defendant's

Motion is GRANTED.

*FACTUAL BACKGROUND*

Joan N. Venuto was hired by ICNA as a temporary employee in 1989, and became a full-time employee in 1990. (Compl. ¶ 8.) She was a major claims technician, and was assigned to the Process Design Information management team. (Compl. ¶¶ 7 9.) In her position, Venuto worked with computer software designs and trained claims staff. (Compl. ¶ 9.) In July of 1994, she took a short-term disability/Family Medical leave of absence after she was diagnosed with depression. (Compl. ¶¶ 11-12). She alleges that while on leave, her immediate supervisor, Roberta Cooper, made discriminatory and derogatory remarks about her disability and ridiculed her ability to return to work. (Compl. ¶¶ 14-15.) When Venuto returned to ICNA on January 5, 1995, (Compl. ¶ 12), she was allegedly demoted to a clerical position and informed that she would not be permitted to apply for any promotional opportunities or advancement for one year, (Compl. ¶ 16). Venuto remains an employee of ICNA. (Compl. ¶ 8.)

During Venuto's leave of absence, ICNA adopted the CIGNA Property & Casualty Division Employment Dispute Mediation /Arbitration Policy. (Mot. to Compel at 2; *see* Pl. Reply Mem. at 5.) [FN1] The arbitration policy was sent to all company employees individually and was accompanied by a cover letter introducing it. *Id.* The cover letter, dated September 26, 1994, stated, in part, "we are implementing a new mandatory process of mediation and arbitration. Beginning October 3, 1994, the Employee Dispute Resolution Program will be implemented to assist in resolving conflicts." (Memo from Morrisey to Property & Casualty Employees of 9/26/94.) The policy stated that the company was instituting binding arbitration as "the required and final means for the resolution of any serious disagreements and problems not resolved by the Division's internal dispute

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 2

Not Reported in F.Supp.2d, 1998 WL 414723 (E.D.Pa.)

**(Cite as: 1998 WL 414723 (E.D.Pa.))**

resolution policy." (10/24/94 CIGNA Property & Casualty Division Employment Dispute Mediation/Arbitration Policy.) The company's arbitration policy stated the following as its scope:

> FN1. The relevant facts and dates cited to defendant's Motion to Compel are uncontested and deemed as admissions by plaintiff. Many of the affidavits and other documents referenced are attached to defendant's Motion to Compel. These documents were neither supplemented nor opposed by plaintiff.

**\*2** This policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege or interest recognized by applicable law. Such serious disputes include claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the American with Disabilities Act, the Family Medical Leave Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment.
*Id.*

Venuto has acknowledged that the arbitration policy was distributed by ICNA through regular and interoffice mail, (Pl. Reply Mem at 5), ant that she initially received the policy via certified mail while on leave, (Letter from Venuto to Cardona of 10/26/94). In a letter addressed to Oscar Cardona of CIGNA Companies, Venuto stated that she believed she had been terminated and, therefore, had received the policy in error. *Id.* According to ICNA, a Human Resources Department Representative responded to Venuto's letter on or about November 16, 1994; informing her that she had not been terminated but was on an unpaid leave of absence. (Letter from Cook to Venuto of 11/16/94.) ICNA states that on or about February 27, 1995 the

arbitration policy and a cover letter introducing the policy was again sent to all employees by interoffice mail. (Mot. to Compel at 3.) ICNA also sent an amended policy to all employees in August 1996. (Compl. ¶ 12; 8/8/96 CIGNA Property & Casualty Division Employment Dispute Arbitration Policy.) [FN2]

> FN2. This amendment did not significantly alter the language regarding the scope of ICNA's arbitration policy.

Venuto filed the present action in federal court pursuant to the ADA, complaining that her subjection to discriminatory and harassing remarks and demotion created a hostile and offensive work environment. Additionally, Venuto asserts that her demotion and subsequent denial of promotional and training opportunities were the direct result of her disability and record of impairment.

ICNA now moves to compel arbitration and stay judicial proceedings pursuant to the Federal Arbitration Act. ICNA argues that the scope of the arbitration policy clearly covered claims brought pursuant to the ADA, and complains that Venuto failed to submit her ADA claims to arbitration as required. Because Venuto was employed by ICNA when its arbitration policy was implemented and continued to be employed thereafter, ICNA asserts that its arbitration policy constitutes an enforceable agreement.

Venuto contends that since the arbitration policy was unilaterally issued, it lacks the requisite mutuality of assent required to constitute a legally enforceable contract. Venuto asserts that continuing to work for ICNA after receiving a copy of the arbitration policy, was not conduct sufficient to constitute acceptance of the policy.

*ANALYSIS*

**\*3** The purpose of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* [FN3] was "to reverse the longstanding judicial hostility to arbitration agreements," and "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                   Page 3

Not Reported in F.Supp.2d, 1998 WL 414723 (E.D.Pa.)

**(Cite as: 1998 WL 414723 (E.D.Pa.))**

500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). "By enacting this legislation, Congress intended to overrule the traditional refusal of courts to make arbitration agreements as enforceable as other contracts...." *Northwestern Nat'l Life Ins. Co. v. U.S. Healthcare, Inc.,* No. Civ.A. 96- 4659, 1998 WL 252353, at *3 (E.D.Pa. May 11, 1998) (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). Subsequently, the Supreme Court has recognized a "liberal federal policy favoring arbitration agreements." *Gilmer,* 500 U.S. at 25 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. at 24).

> FN3. The FAA applies to employment contracts, such as that in the present case, where the contract relates to interstate commerce and the relationship to interstate commerce is less than substantial. *See Great Western Mortgage Corp. v. Peacock,* 110 F.3d 222, 227 (3d Cir.1997) (holding that "the only class of workers included within the exception to the FAA's mandatory arbitration provision are those employed *directly* in the channels of commerce itself.")

"A party's agreement to arbitrate is a matter of contract construction and whether a dispute is arbitrable is a question of law for the court." *International Union v. Exide Corp.,* 688 F.Supp. 174, 180 (E.D.Pa.1998) (citing *Morristown Daily Record v. Graphic Comm. Union Local 8N,* 832 F.2d 31, 33 (3d Cir.1987)); *see Goodwin v. Elkins & Co.,* 730 F.2d 99, 108 (3d Cir.1984) (holding that "arbitration ... is purely a matter of contract.") [FN4] "[A] court is not permitted to examine or determine the merits of an underlying claim. Rather, the only issues presented are whether a valid agreement to arbitrate exists and if so, whether the particular claim or claims in question fall within the scope of the agreement." *BT Alex. Brown, Inc. v. Monahan,* No. CIV.A. 97-7245, 1997 WL 773095, at *1 (E.D.Pa. Dec.10, 1997) (citing *Great Western Mortg. Corp. v. Peacock,* 110 F.3d 222, 230 (3d Cir.1997)); *see Paine Webber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990) (holding that if the

court determines that an agreement exists it then must refer the matter to arbitration without considering the merits of the dispute). Consequently, before a court may stay litigation and compel arbitration it must ensure (1) that a valid arbitration agreement exists between the parties and (2) that the agreement governs the dispute in question.

> FN4. In the third circuit, motions to compel arbitration have been viewed as summary judgment motions if the parties contest the making of the agreement. *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co. Ltd.,* 636 F.2d 51, 54 (3d Cir.1980); *Lepera v. ITT Corp.,* No. 97-1461, 1997 WL 535165 (E.D.Pa. Aug.12, 1997). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Par-Knit,* 636 F.2d at 54. In the present case there are no contested issues of material fact concerning the existence of the arbitration agreement and, therefore, the motion is appropriate for the court to decide as a matter of law.

### A. Existence of an Enforceable Arbitration Agreement

The FAA requires that an agreement to submit a dispute to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Grounds for revocation include fraud or the use of overwhelming economic power resulting in an adhesion contract." *Sues v. Nuveen,* No. CIV.A. 96-5971, 1997 WL 325792, at *3 (E.D.Pa. June 2, 1997); *see Gilmer,* 500 U.S. at 33. The Supreme Court has held that "[m]ere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Id.* Venuto argues that ICNA's arbitration agreement was adhesive as she did receive the policy from ICNA, had no input as to its terms, and did not sign or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 1998 WL 414723 (E.D.Pa.)

**(Cite as: 1998 WL 414723 (E.D.Pa.))**

verbally agree to it.

*4 Venuto's argument that she is not bound to the arbitration policy because she did not participate in drafting the agreement, verbally assent, or sign anything to demonstrate her agreement, misinterprets the law. The FAA requires an agreement to be in writing; "it does not require that the writing be signed by the parties." *Nghiem v. NEC Elec., Inc.,* 25 F.3d 1437, 1439 (9th Cir.1994) (citing *Genesco, Inc. v. T. KaKiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987)); *see* 9 U.S.C. § 2. The purpose of the writing requirement is "intended to permit enforcement of arbitration agreements only in the face of competent evidence of the agreement's existence and scope." *Durkin v. CIGNA Property & Cas. Corp.,* 942 F.Supp. 481, 487 (D.Kan.1996). Consequently, a written policy, such as at issue here, is sufficient to satisfy the writing requirement. Venuto need not participate in the drafting of the policy or physically endorse the policy for it to be valid and enforceable.

This court also rejects Venuto's argument that ICNA's unilateral implementation of the arbitration policy makes it inherently unenforceable. In making her argument, Venuto relied on ninth and first circuit case law. Because such policies were not knowingly accepted by employees, those circuits have declined to find unilaterally promulgated arbitration policies placed in company forms and handbooks valid.

In *Prudential Insurance Co. of America v. Lai,* 42 F.3d 1299 (9th Cir.1994), the ninth circuit found that when the plaintiffs signed U-4 securities exchange registration forms they "did not knowingly agree to forego statutory remedies in favor of arbitration." *Lai,* 42 F.3d at 1305. The U-4 forms contained an agreement to arbitrate any claims required to be arbitrated, under the rules of the organization with which plaintiffs registered. These forms neither described the type of the disputes that were the subject of arbitration nor referred to employment disputes. The plaintiffs subsequently registered with the National Association of Security Dealers which required arbitration of disputes related to the business of its

members. Due to the plaintiffs' lack of understanding of the U-4 forms, the ninth circuit held that they had no way of knowing when they signed the U-4 forms that they were waiving the right to arbitrate sexual discrimination suits.

Later citing *Lai,* the ninth circuit declined to uphold an arbitration policy contained within an employee handbook. In *Nelson v. Cyprus Bagdad Cooper Corp.,* 119 F.3d 756 (1997), the plaintiff received an employee handbook which he signed agreeing to read and understand its provisions. The ninth circuit concluded, however, that "the unilateral promulgation by an employer of arbitration provisions in an Employee Handbook does not constitute a 'knowing agreement' on the part of an employee to waive a statutory remedy." *Id.* at 762.

*5 Venuto also relied on the first circuit's opinion in *Ramirez-de-Arellano v. American Airlines, Inc.,* 133 F.3d 89 (1st Cir.1997). In that case, plaintiff received an employee handbook which contained an internal grievance resolution procedure. *Id.* at 89. While the case was upheld on other grounds, the first circuit held that "[g]iven the apparent unilateral and adhesive nature of American's employee handbook, we do not embrace the argument that [plaintiff] voluntarily waived his right to pursue his claims in federal court." *Id.* at 90-91.

The facts in the case at bar are distinguishable from those cited by Venuto. Most importantly, it is undisputed that Venuto had knowledge of the existence of ICNA's arbitration policy. It was not buried in employee handbook or form, but instead was a separate and distinct document sent to each individual employee, accompanied by a cover letter introducing and explaining it. Further, the policy clearly stated that it was the required and final means of resolving many serious disagreements, and defined the claims within its scope. Federal courts have upheld unilaterally implemented arbitration policies where employees clearly had knowledge of their existence. *See e.g. Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832, 835 (8th Cir.1997) (upholding an employee handbook arbitration provision where the arbitration clause

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 5

Not Reported in F.Supp.2d, 1998 WL 414723 (E.D.Pa.)

**(Cite as: 1998 WL 414723 (E.D.Pa.))**

was both separate and distinct from other provision and was introduced as important); *Durkin,* 942 F.Supp. at 488 (holding that where evidence established that an employee had actual notice of a company policy, the at-will employee was bound by its terms).

Venuto's argument that she is not bound by the arbitration agreement because she did not explicitly consent is likewise without merit. "The parties' intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "An arbitration agreement, however, need not be express; it may be implied from the conduct of the parties." *Teamsters Local Union No. 764 v. J.J. Merrit and Company,* 770 F.2d 40, 42 (3d Cir.1985) (citing *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1356-1357 (9th Cir.1983)). Consequently, it follows that an employee's decision to continue working with an employer for a substantial period of time after the imposition of new policy, demonstrates acceptance of its terms. *See Kinnebrew v. Gulf Ins. Co.,* CA No. 3:94-CV-1517-R, 1994 WL 803508, at *2 (N.D.Tex. Nov.28, 1994) ("[F]ederal courts do not hesitate to find an enforceable agreement to arbitrate when an arbitration policy is instituted during an employee's employment and the employee continues to work for the employer thereafter."); *Durkin,* 942 F.Supp. at 488 (holding that an at-will employees continued employment provided sufficient consideration for the arbitration provision).

*6 Venuto acknowledged that she received a copy of the arbitration policy while she was out on leave, and does not dispute that she also received copies of the policy when she returned to work. Additionally, Venuto continues to work for ICNA, and a significant period of time has passed since the policy was first issued in October 1994. By her conduct in remaining an ICNA employee, the court finds that Venuto has indicated her acceptance of the arbitration policy.

B. *Scope of the Policy*

As the court has found that an enforceable arbitration policy exists between Venuto and ICNA, it must now determine whether her current claims pursuant to the ADA, fall within the scope of the policy. "[T]here is strong presumption in favor of arbitration, and doubts 'concerning the scope of arbitrable issues should be resolved in favor of arbitration'." *Great Western Mortgage Corp. v. Peacock,* 110 F.3d 222, 228 (3d Cir.1997) (citing *Moses H. Cone Memorial Hospital,* 460 U.S. at 24-25 (1983).

The policy at issue in this case describes claims within its scope and states that it applies to disputes brought under the ADA. Therefore, Venuto's claims fall within the scope of the arbitration policy.

*CONCLUSION*

Venuto's complaint pursuant to the ADA is subject to arbitration, and action before this court is stayed. ICNA unilaterally instituted an enforceable arbitration policy requiring binding arbitration of certain claims. Venuto, an at-will employee, was notified of this policy and, by her extended continued employment, accepted and became bound by this arbitration policy. Her current complaint, bringing claims pursuant to the ADA, falls within the scope of the policy.

*ORDER*

AND NOW, this day of July 1998, upon consideration of defendant's Motion to Compel Arbitration and Stay Judicial Proceedings and plaintiff's response thereto, it is hereby ORDERED and DECREED that the Motion to Compel Arbitration is GRANTED. It is further ORDERED that this action is STAYED until arbitration is completed.

Not Reported in F.Supp.2d, 1998 WL 414723 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:98cv00096  (Docket)

(Jan. 08, 1998)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 6

Not Reported in F.Supp.2d, 1998 WL 414723 (E.D.Pa.)

**(Cite as: 1998 WL 414723 (E.D.Pa.))**


END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.